THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEITH A. HILL, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered October 15, 1975, convicting him of burglary in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. The defendant, a 20-year-old music major at Nassau Community College, is employed during the day and attends school full-time at night. He was charged with knowingly and unlawfully entering and remaining in the house of one George Walsh, at 5:30 A.M., on New Year's day, 1975, with the intent to commit a crime therein. Mr. Walsh testified that he was awakened by the sound of glass breaking, that he arose to find that the glass on his rear door had been broken and that he saw defendant reach in, open the door and step into his house. At that point Mrs. Walsh turned on a light and, according to Mr. Walsh, defendant turned and ran around the side of the house. Mr. Walsh, who was armed with a handgun, stepped out of his front door and apprehended defendant at gunpoint. The police were called and defendant was arrested. Defendant testified that he didn't remember breaking the glass on the complainant's back door, or stepping into the complainant's house. He stated that it was possible he had done both, but that he had been at a New Year's Eve party at his girl friend's house and had gotten so drunk that he had little memory of anything until later in the morning when he was driven to Mineola for arraignment. He said that he had only "flashes" of memory and that he

seemed to remember lying down on grass or on wet ground, but he didn't remember where. He remembered looking at a cyclone fence in a back yard and reaching through a windowpane, the glass of which was already broken, and turning a lock. He also remembered standing in front of a garage with a man holding a gun to his head. Defendant's story was amplified and corroborated by his girl friend, Theresa Orlando, and by two other friends, Gail Sheerin and Dennis Conyers, all of whom had been at the party earlier in the evening. Miss Orlando testified that defendant was quite drunk and that he was put into her car at about 3:00 A.M. with the intent of taking him to a diner for the purpose of sobering him up. On the way to the diner, and when they were about a block and a half from defendant's home, defendant demanded to be let out of the car. Since the other occupants of the car thought defendant was going to be sick, he was let out. The people in the car waited for defendant but he did not return. Miss Orlando testified that she spent the next two hours driving around the neighborhood looking for defendant and that she stopped at defendant's home to ask his parents if he had gotten home. The arresting officer testified that defendant had a "moderate to heavy" odor of alcohol on his breath, but that he did not otherwise recall anything unusual about defendant. He stated that it was raining, that defendant's clothes were "moderately wet", and that defendant told him that he only "went in there" because he was cold. There was evidence that the complainant's home was similar to defendant's and, in fact, both houses have chain link fences on each side and are located in the same neighborhood of Levitt homes on the Hicksville-Levittown border. Defendant testified at the trial that when the doors of his own home are locked, he generally crawls through a window right next to the back door. The complaining witness testified that defendant walked quite normally and did not weave and that he was never close enough to defendant to ascertain whether or not defendant had alcohol on his breath. He was asked, on cross-examination, whether he remembered making a statement to defense counsel that the defendant "looked drunk or on drugs". At first, he did not answer the question, stating simply, "He [defendant] had glassiness in his eye." When asked again he responded: "Yes, but he did not stagger or anything. He walked straight when he walked to the garage. He didn't fall down. He didn't do anything. He seen [sic] kind of normal but his eyes were a little glassy." Subsequently, during the course of the trial, defense counsel sought to impeach the complainant's testimony about his prior statement as to defendant's physical appearance by attempting to call Mr. Ross Baer, an attorney, as a witness. Mr. Baer offered to testify that the complaining witness was a client who had come in one day to consult him about incorporating and about buying some property for a gun club of which he was a member. When the complaining witness entered he remarked to Mr. Baer that he had noticed the name of the defense attorney in the instant case on the door. Mr. Baer introduced the complainant to the defense attorney and the three of them discussed the instant matter. According to Mr. Baer, the complainant said at that time that "he never saw anybody so falling down dead drunk in his life". Counsel's application was rejected on the grounds that (1) Mr. Baer's testimony was too collateral and (2) there was no inconsistency to prove. The trial continued and, after nine hours of deliberation, the jury found defendant guilty of burglary in the second degree. It was error for the trial court to exclude the proffered impeachment testimony of Mr. Baer. The collateral evidence rule is said to rest upon auxiliary policy considerations of preventing undue confusion of issues and unfair surprise by extrinsic testimony (see *People v Schwartzman,* 24 NY2d

241). When evidence directly challenges the truth of what a witness has said in matters crucial to or material to the issues on trial, by no process of reason can it be held to be collateral (see *Ewing v United States*, 135 F2d 633, 641; McCormick, Evidence [2d ed.], § 36). The basis of the defense in this case was that defendant was so drunk that he could not have formed the intent requisite to the commission of a burglary. The testimony and credibility of the complaining witness was crucial with regard to resolution of this issue and it cannot be said that evidence of a prior inconsistent statement on this point was collateral. Evidence of the prior inconsistent statement might well have caused the jury to disbelieve the complainant's testimony to the effect that defendant did not look drunk. Nor can it be said that the complainant's bare admission to having made the prior statement was sufficient to justify the trial court's ruling. The right to scrutinize prior inconsistent statements cannot be cut off by the mere admission by the witness that he has been guilty of inconsistency (see *People v Schainuck*, 286 NY 161, 165). A party may prefer to have the prior inconsistent statement clearly brought out and emphasized; it would be unfair to restrict him to the unemphatic mode of proving it by the witness' admission and to subject the party to the necessity of disputing whether the admission has been full and exact (see 3A Wigmore, Evidence [Chadbourn Rev.], § 1037). Defendant's story has a ring of truth to it; as we cannot say that the evidence against him was "overwhelming", the trial court's error cannot be considered harmless (see *People v Crimmins*, 36 NY2d 230, 241). Martuscello, Acting P. J., Christ, Shapiro, Titone and Hawkins, JJ., concur.