THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v IRVING OHLSTEIN, Appellant.

First Department, October 21, 1976

*Herald Price Fahringer* of counsel *(Lipsitz, Green Fahringer Roll, Schuler & James,* attorneys), for appellant.

*Richard H. Girgenti* of counsel *(Robert M. Pitler* with him

on the brief; *Robert M. Morgenthau, District Attorney)*, for respondent.

*Per Curiam.* Irving Ohlstein and Lloyd Kurzman were indicted for the murder of Robert Newmark. Ohlstein, after a jury trial, was convicted of the crime of murder; Kurzman was acquitted.

The key testimony presented by the prosecution was through the mouths of witnesses declared by the trial court to have been accomplices as a matter of law. The prime issue on this appeal is whether the prosecution presented corroborative evidence of that accomplice testimony which tended to connect the defendant with the commission of the crime (CPL 60.22, subd 1).

The victim, Robert Newmark, was found dead in the bedroom of his apartment on August 11, 1972. The bullets recovered from the body of Newmark and from his apartment were identified as .25-caliber bullets all fired from the same .25-caliber weapon. The murder weapon was not recovered.

In 1973, while the police were conducting a separate investigation involving pornography and organized crime, one of their contacts, Robert Surretsky, supplied them with information about the Newmark murder. The testimony at trial revealed that Surretsky had been approached by Ohlstein in September, 1970 to find someone to kill Newmark. Surretsky suggested Edward Mack, a resident of Massachusetts. There were discussions held among Ohlstein, Surretsky and Mack as to the murder and disposal of the corpse. After these 1970 meetings, Surretsky did not meet with Ohlstein until October, 1972. Mack met with Ohlstein in March, 1971, at which time Mack said he was no longer working with Surretsky. In July, 1972, Ohlstein introduced Mack to Thomas Richburg, an employee of Ohlstein's, and stated that Richburg would assist in the murder.

A few weeks before the murder, Mack, while at a bar, met Lloyd Kurzman, a social acquaintance from Massachusetts. Kurzman needed money and he, too, agreed to participate in the murder.

A few days before Newmark's murder, Richburg, Ohlstein and one Carl Richardson went to buy lumber. Richardson, a high-school student, was also an employee of Ohlstein's, working for him only during the summertime. The three of them drove in a truck owned by Dura Tite Screw Company (owned

by the defendant Ohlstein) to a lumber company, purchased lumber, and took it to the basement of the Dura Tite warehouse where they began constructing a box, which was approximately three feet by five feet and had a top to it. When the box was almost finished, Richardson was told to get into the box. The box was small, but nonetheless Richardson was able to fit his entire body into it. Richardson was told by Richburg that the box was being built for a man.

On the same day that the box was built, Mack and Kurzman were together with Richburg and Ohlstein in the basement of Dura Tite. Mack asked Ohlstein what Richburg was doing, and Ohlstein reassured Mack that Richburg was "all right," and then Richburg, in the presence of Ohlstein, stated, "I'm building a coffin."

A few days after the coffin was built, Ohlstein directed Richburg to dismantle it, which direction was executed by both Richburg and Richardson. Several days before the actual murder of Newmark, Ohlstein, Kurzman, Mack and Richburg arranged to have Newmark killed at the basement of Dura Tite. The four of them met in the basement. There Richburg got a .25-caliber automatic from Ohlstein. Ohlstein left, stating he did not want to be around when Newmark was killed. The plan called for Ohlstein and Newmark to have dinner in Chinatown and then to return to the basement of Dura Tite where Newmark would be killed. The meeting did not materialize. When Ohlstein returned to Dura Tite about two or three hours later, Richburg returned the .25-caliber weapon to Ohlstein and everyone left.

Testimony at the trial revealed that sometime before Christmas of 1968, one Hector Vasquez had sold Ohlstein a pistol. However, Vasquez was unable to verify that the pistol sold was in fact a .25-caliber pistol.

In September, 1972, shortly after the Newmark murder, Kurzman visited Surretsky at his apartment and Surretsky asked Kurzman if he had killed Newmark. Kurzman allegedly admitted to the murder, stating that he had gone to Newmark's apartment and shot Newmark in the head. He also stated that he was paid by Ohlstein. In addition, Kurzman allegedly admitted to Mack in December, 1972 that he had killed Newmark because he needed the money.

In February, 1974, Kurzman was arrested in Lenox, Massachusetts, for the murder of Newmark. On the same day, Mack was arrested for conspiring to murder Newmark.

Mack initially refused to co-operate with the authorities in the investigation of the murder. On April 15, 1974, he was released on bail of $50,000 supplied by Ohlstein, who paid $3,000 in cash and posted as security bankbooks reflecting deposits of $35,000. Ohlstein also paid $1,000 in fees to the attorney representing Mack at his arraignment. Kurzman was not released on bail.

Sometime after Mack was released on bail, he met with Ohlstein. At this meeting, Mack allegedly offered to lie, take the stand, go away, or do anything else Ohlstein wanted in exchange for $15,000. Mack's testimony at the trial was that Ohlstein gave him $300 and said he would have the money for Mack in a couple of days.

Further testimony at the trial indicated that Ohlstein owed Newmark between $170,000 and $250,000.

While the above synopsis does not detail all of the involved testimony given at the trial (in a record of over 6,000 pages), it does relate facts relevant to a discussion of the corroborative evidence and its sufficiency to sustain the conviction of murder.

Accomplice testimony is insufficient by itself to sustain a criminal conviction. It must be corroborated by "evidence tending to connect the defendant with the commission of such offense" (CPL 60.22, subd 1). Testimony of each of several accomplices is not corroborative of the other (*People v O'Farrell,* 175 NY 323; *People v Chamberlain,* 38 AD2d 306, 311); nor would testimony tending merely to establish the credibility of an accomplice be sufficient (*People v Fiore,* 12 NY2d 188; *People v Goldstein,* 285 NY 376).

Our Court of Appeals has held (*People v Kress,* 284 NY 452, 460): "The corroborative evidence to have any value must be evidence from an independent source of some material fact tending to show that defendant was implicated in the crime * * * The *independent* evidence must be material evidence *other* than that of the accomplice and must fairly and reasonably *tend to connect the defendant with the commission of the crime* * * * It may not depend for its weight and probative value upon the testimony of the accomplice. It need not, alone and by itself, establish that defendant committed the crime. But where the corroborative evidence standing alone has no *real* tendency to connect defendant with the commission of the crime, it is insufficient".

In the case at bar, the People rely on four items of indepen-

dent evidence as corroborative of the story told through the mouths of Surretsky, Mack and Richburg, the three men found by the trial court to be accomplices as a matter of law; they are:

1. The construction of a "coffin";

2. The purchase by Ohlstein of a .25-caliber weapon;

3. The posting of bail and paying of attorney's fees by Ohlstein for Mack; and

4. The indebtedness of Ohlstein to Newmark.

We find that these items either alone or in the aggregate are insufficient to corroborate the accomplice testimony. The only nonaccomplice testimony regarding the construction of the "coffin" was from Carl Richardson, who received instructions from Richburg, an accomplice. Richardson could not in any way connect Ohlstein with directing the construction of the box. Nor was its size (three feet by five feet) normal for use as a "coffin." Similarly, the independent proof of the purchase of a pistol by Ohlstein in 1968 is insufficient. The seller of the gun could not identify its caliber, and the date of its purchase was remote (1968) from the date of the crime (1972). The posting of bail for Mack is also insufficient corroborative evidence since Mack was not indicted for murder and there is no showing (other than Mack's testimony) that Ohlstein posted bail for his own benefit.

The evidence of Ohlstein's indebtedness to Newmark cannot be evidence tending to connect Ohlstein with the commission of the crime. This debt and the alleged plot to kill Newmark both existed since 1970; yet while supposedly fearful of a demand for payment, Ohlstein delayed for two years before allegedly having Newmark killed. In addition, there was no assurance that Ohlstein would not be called upon to pay his debt to the estate of Newmark. This independent evidence of motive must therefore be found insufficient as well (cf. *People v Wyler*, 37 AD2d 375, 377).

We find therefore that, since there was insufficient corroborative evidence presented within the meaning of CPL 60.22, the conviction must be reversed and the indictment dismissed. We must parenthetically note that the zeal of the Trial Justice in this case (e.g., in his interjection in questioning), while not rising to the level of reversible error, should in the future be curbed. A Trial Justice must be impartial and dispassionate and not appear as an advocate.

Accordingly, the judgment of the Supreme Court, New York County, rendered June 18, 1975, convicting the defendant of the crime of murder, should be reversed on the law and the indictment dismissed. The appeal from the order of the Supreme Court, New York County, dated April 2, 1976, denying the motion to vacate the judgment pursuant to CPL 440.10, is dismissed as academic.

BIRNS, J. (dissenting). On this appeal from a judgment convicting the defendant of murder, I take issue only with the majority's finding that the People failed to furnish the corroborative evidence necessary to support accomplice testimony as required (CPL 60.22).

The People assert that the record discloses four instances of activity by the defendant which provided corroboration: (1) that the defendant Ohlstein purchased a revolver from Vasquez four years prior to the murder with which he was charged, (2) that a "coffin" was constructed for the receipt of Newmark's body, (3) that the defendant Ohlstein owed Newmark $250,000 secured by notes, and (4) that Ohlstein provided for Mack's bail upon Mack's arrest for conspiracy to murder.

The first two items are, respectively, remote and vague, and it is agreed by the court that neither item could provide the required corroborative evidence. As to the third item, it is agreed that although the debt owed by Ohlstein to Newmark might supply a motive for the crime, motive alone cannot be equated with corroboration.

With respect to the fourth item, namely, Ohlstein's arrangement to furnish Mack's bail in the sum of $50,000, this behavior by Ohlstein must be examined in the framework of Mack's testimony.

Mack had related to the jury that as early as September, 1970 Ohlstein had paid Mack, had planned the murder with him, and that after the murder Ohlstein had continued to make payments to him in order to keep him out of New York City. Mack further testified that after his arrest for conspiracy to murder Newmark, he, Mack, was confident that Ohlstein would bail him out and that he held over Ohlstein's head the threat of his co-operation with the police.

Through the testimony of an independent witness, Marvin Migdal, it was established that Mack's $50,000 bail was secured by a bail bond for which the defendant Ohlstein and

Migdal were sureties. Migdal also testified that Ohlstein borrowed $10,000 from his (Ohlstein's) sister to open a savings account which was used as security for Mack's bail bond and that Ohlstein also got Migdal to make himself personally liable with Ohlstein in the event Mack fled the jurisdiction and the bond was forfeited. Migdal further stated he gave Mack money after Mack's release from jail, but was reimbursed by Ohlstein for this advance.

It. should not be overlooked that in connection with this episode concerning bail and payment to Mack, that Ohlstein and Mack were neither social friends nor business associates.

I agree with the majority that the correct rule as to corroboration of accomplice testimony is found in *People v Kress* (284 NY 452, 460). But reference to *Kress,* unfortunately, is limited by the majority to the legal rule expressed. Attention should be directed to the facts of that case and the observation of the Court of Appeals as to those facts.

In brief, *Kress* concerned the robbery of a $427,000 payroll from an armored truck in front of the Rubel Ice Company in Brooklyn in August, 1934. Stewart, the principal participant in the robbery, testified for the State at Kress's trial in 1939, implicating Kress in planning and participating in the robbery. Stewart told of meeting Kress in Sing Sing prison in 1937, where each was confined for convictions stemming from other charges. Stewart related a conversation he claimed he had with Kress, in which he reminded Kress of Kress's unfulfilled promise to contribute towards the medical and burial expenses of one of the robbers shot and killed during the getaway, to which Kress replied he (Kress) would make arrangements for Stewart to receive the money. Stewart testified he asked for the money because he (Stewart) was processing an appeal which was expensive, from the conviction for which he was there confined.

Kress's brother-in-law, Harkavy, an attorney at law, testified that members of Stewart's family had importuned him for money while Kress was in prison and had threatened the Kress family that harm would befall Kress if Kress did not make a contribution towards the cost of Stewart's appeal, that thereupon Kress's father gave $100 to Harkavy which Harkavy thereafter gave to Stewart's father at Harkavy's office. There was no evidence that Kress authorized the payment. On the contrary, Kress reportedly told members of his family not to pay any amount.

With respect to the contention that this evidence constituted corroboration of Stewart's testimony, the Court of Appeals stated (284 NY 452, 464): "The fact of payment of $100 was not the vital point. Without establishing the reason for the payment and authority or knowledge and consent of Kress to the payment such testimony was not corroborative evidence as required by the statute. The testimony concerning the reason for the payment which would furnish evidence tending to connect the defendant with the commission of the crime is that of the accomplice only. Thus the attempt to connect the defendant with the commission of the crime by the testimony of the $100 payment rests upon the testimony of the accomplice himself and is insufficient. There was no evidence whatever to the effect that Kress had authorized the payment of the $100 to Robert Stewart or to Stewart's parents or to any one else nor any evidence from which any such inference could be drawn unless it was from the evidence of the accomplice. *Such a payment could corroborate the testimony of the accomplice as to the existence of the debt only if the payment were made and received directly or indirectly from the person indebted. The unauthorized acts of third parties may not be used to connect the defendant with the commission of the crime (People v Buzzi,* 238 N. Y. 390; *People v Pignataro,* 263 N. Y. 229)." (Italics added.)

In *Kress* corroboration was not found to exist because a necessary ingredient was missing, namely, proof that payment was made and received directly or indirectly from Kress. That ingredient, however, is present in the case at bar. There is proof that Ohlstein himself provided bail and that he personally obtained financial assistance from others for the benefit of Mack.

In the circumstances of the case before us it could be argued persuasively to the jury from this bail episode alone, that Ohlstein was very much in fear that Mack would disclose his complicity to the police, as Mack testified, and that Ohlstein in providing bail hoped to control his testimony or his evidence and that such arrangement for bail was demonstrative of Ohlstein's "consciousness of guilt" and connected him with the murder of Newmark.

It needs no fecund imagination to conclude that the furnishing of bail by Ohlstein to Mack in the framework of accomplice testimony that Ohlstein planned the murder of his

creditor linked Ohlstein to the killing (see *People v Kress, supra).*

In 1921, in *People v Dixon* (231 NY 111, 116), the Court of Appeals said: "The corroborative evidence need not show the commission of the crime; it need not show that defendant was connected with the commission of the crime. *(People v. Mayhew,* 150 N. Y. 346, 353; *People v. Cohen,* 223 N. Y. 406, 426.) It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth. The corroboration is not restricted to any particular point.* Its connection with defendant's own statements and denials should be considered. *(People v. Becker,* 215 N. Y. 126, 140.) It may vary in its nature according to the circumstances of the particular case. Matters in themselves of seeming indifference or light trifles of the time and place of persons meeting may so harmonize with the accomplice's narrative as to have a tendency to furnish the necessary connection between defendant and the crime." (Italics added.)

Again in 1966, in *People v Morhouse* (21 NY2d 66, 74) our Court of Appeals reiterated: "As we indicated in *People v. Fiore* (12 N Y 2d 188, 201), the corroboration requirement of section 399 of the Code of Criminal Procedure is fully met when there is some nonaccomplice evidence 'fairly tending to connect the defendant with the commission of the crime' (quoting from *People v. Elliott,* 106 N. Y. 288, 292). *The corroboration need not, as must circumstantial evidence, lead exclusively to the inference of the defendant's guilt. As this court has noted, even 'Matters in themselves of seeming indifference * * * may so harmonize with the accomplice's narrative as to have a tendency to furnish the necessary connection between the defendant and the crime.' (People v. Dixon,* 231 N. Y. 111, 116-117; see, also, *People v. Crum,* 272 N. Y. 348, 353-354; *People v Malizia,* 4 N Y 2d 22, 27; *People v. Reddy,* 261 N. Y. 479, 484.)" (Italics added.)

In this case, a jury should be called upon to resolve, as a question of fact, whether this seemingly gratuitous act of furnishing substantial bail for a "stranger" tended to connect Ohlstein with the commission of the crime charged, whether it had "a tendency to furnish the necessary connection between the defendant and the crime". We should not hold as a matter of law that it did not.

Accordingly, I would affirm the conviction herein.

STEVENS, P. J., MARKEWICH and LANE, JJ., concur in *Per Curiam* opinion; BIRNS, J., dissents in an opinion.

Judgment, Supreme Court, New York County, rendered on June 18, 1975, reversed, on the law, and the indictment dismissed; and appeal from order of said court, entered on April 2, 1976, dismissed as academic.