■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCIS X. McCANN, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Tsoucalas, J.), rendered May 15, 1981, convicting him of sodomy in the first degree, sexual abuse in the first degree (two counts), unlawful imprisonment in the first degree and endangering the welfare of a child, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. On September 13, 1976 the then 14-year-old complainant was returning home from school when she was accosted in the elevator of her apartment building by a man who took her at gunpoint to an incinerator room and committed sodomy. More than three years later the victim identified a photograph of the defendant — a Federal law enforcement officer — and then picked him out of a lineup as her assailant. At the trial, the complainant was the only identification witness. The defendant vigorously protested his innocence and sought to establish that the victim's description of her attacker substantially differed from his own appearance at the time the offense was committed. The victim had initially described her assailant to the police as being approximately 30 years old, 5 feet 9 inches, 180 pounds, light complexioned, with short dirty blond hair and reddish blond facial hair that was more pronounced around his chin. He used a short silver handgun and wore a yellow metal watch. The defendant introduced photographs of himself taken six days after the commission of the crime in which he had a light reddish goatee type beard and medium length reddish brown hair. He stood 5 feet 6 and ½ inches and weighed approximately 180 pounds in September, 1976. Additional testimony was introduced with respect to the defendant's complexion, the color of his personal and government issued weapons, watch color and clothing style all of which varied from the victim's description. The defendant also introduced his official diary showing that he was in his office at the time the crime occurred. After two days of deliberations, the jury resolved the issue of identification against the defendant. After review of the record and in spite of the inconsistencies in the trial testimony and exhibits with respect to the issue of identification, we are unable to conclude that the evidence was insufficient as a matter of law to sustain the jury's determination of the defendant's guilt (cf. *People v Joyiens*, 39 NY2d 197; *People v Castillo*, 62 AD2d 938; *People v Wynn*, 57 AD2d 937). Nevertheless, it is our judgment that a new trial is required. It has been often repeated that "[t]he vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification" (*United States v Wade*, 388 US 218, 228; see, generally, O'Connor, "That's the Man": A Sobering Study of Eyewitness Identification and the Polygraph, 49 St. John's L Rev 1; Sobel, Eye-witness Identification, § 1.1). There can be no greater miscarriage of justice than the conviction of an innocent person as a result of mistaken identification (see, e.g., *People v Kidd*, 76 AD2d 665; *United States v Greer*, 538 F2d 437, 441). Mistaken identification " 'probably accounts for more miscarriages of justice than any other single

factor — perhaps it is responsible for more such errors than all other factors combined' " (*United States v Wade, supra,* at p 229). Where the issue of guilt is as close as it is in the instant case, it is essential that the jury be permitted to deliberate in a trial atmosphere that is as error free as possible. Thus, in the interests of justice, we reach all prejudicial errors committed during the trial — whether preserved or not. Considered together, and in the light of sharp dispute as to whether it was the defendant who actually committed the crime, we conclude that these errors had the cumulative effect of depriving the defendant of a fair trial (*People v Shanis,* 36 NY2d 697, 699; *People v Brown,* 76 AD2d 932; *People v Allen,* 74 AD2d 640). During the defendant's cross-examination he was asked if he had had a conversation in June, 1979 with a friend, Police Officer Dennis Bischoff, in which he stated that "sodomy is a lesser crime than rape" and "it's all right if you stick it in their mouth or their ass, that's not rape". The defendant denied that such conversation ever occurred. The prosecutor was then allowed to call Officer Bischoff in rebuttal. He testified that the defendant stated that he had "heard you are looking for a guy in Jackson Heights, and I said, yes. I believe it's a rape case, * * * [defendant] mentioned that sodomy is a lesser crime than rape and I said rape one and sodomy one I believe have the same sentence. So therefore I think it's the same crime. He said if you put it in the girl's mouth or put it in her rear that's not considered rape. I said I believed that comes under the sodomy statute." Defense counsel's objection to this testimony on relevance grounds was overruled. This rebuttal evidence should not have been admitted. It is well settled that "[r]ebutting evidence * * * means, not merely evidence which contradicts the witnesses on the opposite side and corroborates those of the party who began, but evidence in denial of some affirmative fact which the answering party has endeavored to prove" (*Marshall v Davies,* 78 NY 414, 420; 6 Wigmore, Evidence [Chadbourn rev 1976], § 1873). "A party holding the affirmative of an issue is bound to present all of his evidence before he closes his proof and may not add to it by the use of rebuttal evidence" (*Yeomans v Warren,* 87 AD2d 713). In this regard "[i]t is the duty of the People to present the full case on which it relies to the jury" (*People v Richardson,* 25 AD2d 221, 225). Clearly, rebuttal testimony is not properly received in evidence where the relevant purpose of the proffered testimony concerns the collateral question of credibility (*People v Allen,* 74 AD2d 640; *People v Tufano,* 69 AD2d 826; *People v Goggins,* 64 AD2d 717). The People claim in this case, however, that the rebuttal evidence was properly received as bearing on the issue of the defendant's consciousness of guilt. We do not agree. The relevant principles concerning rebuttal evidence dictate that evidence concerning a defendant's consciousness of guilt should be presented in the prosecution's case-in-chief (*People v Hatterson,* 63 AD2d 736; *People v Fluker,* 51 AD2d 1045; *People v Reagan,* 49 AD2d 913). No reason is offered for not having Officer Bischoff testify during the People's direct case (cf. *People v Coles,* 47 AD2d 905, 906). To the substantial prejudice of the defendant, particularly since Officer Bischoff was the final witness in the case, the prosecutor waited until after the defendant testified before seeking to prove that a statement had been made which either evinced guilt or indicated that the defendant had lied on the stand. In either case such evidence was not admissible in rebuttal and in the context of this trial, it was highly damaging. Manifestly, the People's over-all strategy was to impugn the defendant's character and cast him as one who might be likely to have committed a sexual offense. This tack taken by the prosecutor without proper basis necessarily impeded a dispassionate review of the identification evidence. Thus, the prosecutor sought to bolster the identification evidence by using the improper rebuttal testimony to portray the

defendant as the type of person who was likely to commit the sexual offenses charged. In questioning a defense witness, the prosecutor asked whether it "[w]ould * * * be out of character for [the defendant] to say something to you like, 'It's all right to stick it in a girl's mouth or her ass' would he be saying that, would he say that?" The District Attorney never established that the inquiry was made in good faith and it would appear that it had no other purpose but to inflame the jury and improperly establish that the defendant had the propensity to commit the crimes charged (see *People v Duffy,* 36 NY2d 258; *People v Mejias,* 72 AD2d 570). Similarly, the prosecutor inquired of another defense witness whether the defendant read *Playboy* and *Penthouse* magazines. This testimony had no probative value whatever and could only have been intended to prejudice the jury (see *People v Chandler,* 65 AD2d 920). Additional efforts were made by the prosecutor to imply that defendant might have had drinking and marital problems. In addition, a prosecution witness was called to testify that when working with the defendant in 1979, almost three years after the crime, he observed that the defendant had in his car a dirty blond wig which the defendant had told him he used for surveillance purposes. The defendant denied possession of any wig. This testimony provided the jury with a purported basis to reconcile conflicting evidence with respect to the color of the assailant's hair which was described as dirty blonde and the defendant's hair which was reddish brown. The length of time between the occurrence of the offense and the alleged viewing of the wig was an important factor for the jury to consider in weighing the probative value of this evidence, yet the jury was never instructed to consider the very substantial time lapse nor the purpose for which the evidence was received, thus leaving open the possibility of the jury's engaging in unfair speculation (see *People v Roff,* 67 AD2d 805; *People v Winston,* 52 AD2d 432). Moreover, the defendant was improperly precluded from introducing evidence to support his defense (see *People v Hill,* 52 AD2d 609; *People v Dewey,* 23 AD2d 960). It was the defendant's contention that he was doing paperwork in his office at the time of the commission of the crime. To corroborate his claim, he sought to introduce into evidence nine typewritten reports dated the day *after* the attack took place stating that they had been prepared by him on the day of the attack even though typewritten the day after the crime. One report in fact had a cross reference to work performed just a few hours before the attack. Clearly then, this evidence was admissible and the weight to be given to the report was a matter for the jury. The defendant also sought to introduce his personal weapon to show it did not match the gun described by the victim. Although several witnesses were permitted to testify that the defendant's gun was not the same color as that used by the assailant, the court should have also admitted the weapon itself into evidence so that the jury could see the gun for themselves. The trial court also overstepped proper boundaries in its questioning of defense witnesses (see, e.g., *People v Yut Wai Tom,* 53 NY2d 44, 57; *People v Ohlstein,* 54 AD2d 109, 113, affd 44 NY2d 896). Although it cannot be said that the proceedings were marked by an undue amount of questioning from the Bench (see, e.g., *People v Mees,* 47 NY2d 997), the transcript reveals that the trial court, at crucial points in the direct testimony of defense witnesses, improperly and unfairly sought to elicit information that was consistent with the victim's description of the assailant and damaging to the asserted defense (see *People v Yut Wai Tom, supra,* p 57). This was not only an improper exercise of discretion but further served to deprive the defendant of a fair trial. Finally, the trial court failed to sufficiently guide the jury in its evaluation of the identification evidence presented during the trial. In view of the substantial period between the commission of the offense and the victim's

identification of the defendant, as well as the contradictions in the victim's description of her attacker and the defendant's appearance, the trial court, at the very least, should have instructed the jury that, in reviewing the complainant's testimony they should consider the accuracy of the victim's prior descriptions as well as the time lapse (see, e.g., *People v Rothaar,* 75 AD2d 652; *People v Gardner,* 59 AD2d 913). Indeed, the identification charge was the only instruction that the jury requested be repeated. Under the circumstances, more substantial judicial clarification and guidance with respect to the identification issue should have been given rather than the bare bones identification charge that was actually delivered (see *People v Daniels,* 88 AD2d 392). Since we have concluded that the defendant did not receive a fair trial there must be a reversal and a new trial. Titone, J. P., Lazer, Brown and Niehoff, JJ., concur.