■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK SEPULVEDA, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Eiber, J.),

rendered January 26, 1982, convicting him of manslaughter in the second degree and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law and as a matter of discretion in the interest of justice, new trial ordered solely on the second count of the indictment charging defendant with criminal possession of a weapon in the third degree, and first count of the indictment dismissed, without prejudice to the People to represent any appropriate charges to another Grand Jury (see *People v Beslanovics,* 57 NY2d 726). No questions of fact have been raised or considered.

Defendant was indicted for murder in the second degree and criminal possession of a weapon in the third degree arising out of the death, by shooting, of one Juan Vargas. Three eyewitnesses testified to the events leading up to the shooting, which occurred in the living room of the defendant's mother's house several hours after the defendant's brother had been murdered. One of the witnesses did not see the actual shooting because she had left the room momentarily. The other two witnesses, Mr. Perez and Mr. Cardona, testified that the defendant had twice entered the living room, the first time carrying a handgun and the second time carrying a shotgun which he pointed at all those who had gathered to convey their condolences, and demanded to know how his slain brother had come to be killed. When he entered a third time, he walked straight over to the decedent, held the shotgun up to him, and the gun discharged, perhaps accidentally. Mr. Cardona's testimony was impeached, however, by Detective Hugh O'Donnell, who testified that on the date of the occurrence, Mr. Cardona had told him that he did not see the shot fired because he was leaving the house at the time. There was also testimony from these witnesses that another person who was present in the room at the time of the shooting also possessed a gun, which the defendant had given him. The defendant took the stand and denied that he possessed a gun and claimed that he was in the kitchen talking with several other persons at the relevant time. Three other witnesses testified in support of his alibi. The jury acquitted defendant of murder in the second degree and the lesser included offense of manslaughter in the first degree but convicted him of manslaughter in the second degree and criminal possession of a weapon in the third degree.

On appeal, defendant contends, *inter alia,* that he was denied his rights to confront the witnesses against him and to a fair trial when the court curtailed his cross-examination of Mr. Perez, the State's key witness against him. We agree. After

defense counsel elicited testimony that Mr. Perez knew a woman by the name of "Cookie" but that he did not know her last name, defense counsel inquired whether Perez had "ever" written her a letter or whether he had lived with her. The court sustained the People's objections to such questions, on the ground that the proffered testimony was irrelevant. During the *in camera* discussion which ensued, however, defense counsel informed the court that he also wished to establish that Mr. Perez had spoken to "Cookie" about the incident and told her that "he gave a statement to the police and it was a lie". The court ruled that defense counsel could not pursue this line of inquiry and, when defense counsel resumed his questioning of Mr. Perez, he was effectively precluded from questioning him about his alleged prior inconsistent statement:

"Q. Did you ever talk to Cookie about —

"[The prosecutor]: Objection.

"MR. STEWART [defense counsel]: Wait until I finish the question.

"Q. (Continuing) about the statement that you gave to the police on December 16, 1978?

"[The prosecutor]: Objection.

"THE COURT: Sustained.

"Q. Did you speak to Cookie last week?

"A. Yes * * *

"Q. Isn't it a fact, Mr. Perez, that you told Cookie —

"[The prosecutor]: Objection.

"THE COURT: Sustained * * *

"THE COURT: Counsel, I have directed you not to pursue this line of questioning. It is not being relevant [*sic*] to the issues before the Court whether —

"MR. STEWART: Whether he lied or not?

"[The prosecutor]: Objection.

"THE COURT: Sustained."

The defendant sought to impeach the State's principal witness not on a collateral matter but on the critical issue of the case, i.e., whether the defendant was the person who shot Vargas. The alleged prior inconsistent statement would have directly contradicted Mr. Perez's testimony, and the defendant should have been permitted to freely cross-examine him about such a statement (see *Chambers v Mississippi,* 410 US 284; *People v Cruz,* 88 AD2d 621). "The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process" (*Chambers v Mississippi,*

*supra,* p 294). By curtailing defendant's cross-examination of Mr. Perez, the court effectively deprived him of his rights to confrontation and to receive a fair trial.

This error was compounded when the court denied defendant's application for a short adjournment to procure "Cookie's" presence at trial. That witness was identified to the court, was within the jurisdiction, and defense counsel made a showing of good faith and diligence to produce the witness (see *People v Foy,* 32 NY2d 473). Therefore, the court should have granted the short adjournment to enable the defendant to obtain this material witness.

Moreover, the prosecutor used several improper methods to impeach one of the defense witness' credibility. He repeatedly asked the witness whether he had lied when he pleaded guilty to certain crimes, and improperly required him to say that the prosecution witnesses were lying (see *People v Calderon,* 88 AD2d 604; *People v Santiago,* 78 AD2d 666). The prosecutor also impermissibly suggested that the People's witnesses were in physical danger because they testified against the defendant (see, e.g., *People v Brown,* 76 AD2d 932). Finally, in his summation, the prosecutor remarked that defendant was trying to "create a reasonable doubt * * * where there is none" and that the trial was not a search for a reasonable doubt but a search for the truth. This court has previously condemned such remarks as tending to mislead the jury and usurp the court's function of instructing the jury on the law (see *People v Robinson,* 83 AD2d 887). We find that the cumulative effect of these errors was to deprive the defendant of a fair trial, and, although not all of the above errors have been preserved for review, reversal is required.

In addition to the above errors, two other errors warrant discussion in light of our disposition, notwithstanding that the errors have not been preserved for review. First, the court's charge with respect to the alibi defense suggested that defendant bore some burden to prove the truth of his alibi because it contained some burden-shifting language, which this court has previously disapproved (see, e.g., *People v Wallace,* 87 AD2d 895; *People v Vasquez,* 87 AD2d 830; *People v Bauer,* 83 AD2d 869). An alibi charge must unequivocally state that the People bear the burden of disproving the defendant's alibi beyond a reasonable doubt (*People v Victor,* 62 NY2d 374). Second, although the defendant was charged with criminal possession of a weapon as a felony pursuant to subdivision (1) of section 265.02 of the Penal Law and CPL 200.60 mandates that certain procedures be followed when a prior conviction renders a later offense more serious, such procedures were not observed in the instant case.

We have considered the defendant's remaining contentions and find them to be without merit. Mollen, P. J., Titone, Thompson and Bracken, JJ., concur.