■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM DICKSON, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County (Clabby, J.), rendered November 11, 1983, convicting him of rape in the first degree, sodomy in the first degree (two counts), rape in the second degree, sodomy in the second degree (two counts), and sexual abuse in the first degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

Upon a review of the record, we find no basis to disturb the instant verdict, which reflects the jury's determination of the facts and the credibility of the witnesses (see, People v Kranitz, 104 AD2d 956). The testimony of the 12-year-old complainant, the defendant's niece, was specific concerning the details of the incident, and closely paralleled the defendant's own account of his activities with the complainant on the day in question insofar as they relate to the specifics of time and place. We note that there is no statutory requirement for corroboration of the crimes of rape, sodomy and sexual abuse in the first degree when predicated upon allegations of forcible compulsion (see, Penal Law § 130.35 [1]; § 130.50 [1]; § 130.65 [1]; cf. Penal Law former § 130.16) and that the victim's testimony was itself sufficient to establish defendant's guilt of those charges (see, People v Fuller, 50 NY2d 628, 631).

At the time of defendant's trial, however, corroboration was required for the crimes of rape in the second degree and sodomy in the second degree, since the lack of consent in those offenses is predicated on considerations of the victim's age (see, Penal Law former § 130.16). Adequate corroboration tending both to "[c]onnect the defendant with the commission of the[se] offense[s]" and to "[e]stablish that an attempt was made to engage the alleged victim" in the proscribed activities (Penal Law former § 130.16 [b], [a]) nevertheless appears on this record, for while the defendant steadfastly denied the allegations of sexual contact with the complainant, both his trial testimony and his extrajudicial admissions to the investigating officers corroborated the victim's testimony regarding, inter alia, the time that they spent alone together in her mother's apartment, his running of the bath water, the vic-

tim's attempt to telephone her grandmother, and defendant's direction to her to lie to her mother regarding the occurrence of a fire on the premises. Moreover, while he denied as much in his trial testimony, the defendant's admissions to Detective Barbaro also tended to corroborate the victim's testimony regarding his purchase of a bottle of wine on the way to her mother's apartment on the day in question. Such testimony, considered in its entirety, was clearly sufficient, in the words of the operative statute, to "[c]onnect the defendant with the commission of the offense[s]" for which corroboration was necessary (Penal Law former § 130.16 [b]; *People v Pepper,* 59 NY2d 353, 359). In addition, the medical testimony regarding the detection of cervical and abdominal tenderness, a disturbed hymenal ring and the unusual ease of the pelvic examination to which the then 11-year-old complainant was subjected within a short time after the alleged occurrence all tended to supply the remaining necessary corroboration (*see,* Penal Law former § 130.16 [a]).

Regarding other of defendant's contentions, we note, that he failed to object to the court's intervention in the witnesses' examinations, the prosecutor's method of cross-examining him, and the allegedly improper statements made during the People's summation. Accordingly, these claims are not adequately preserved for review (*see, People v Charleston,* 56 NY2d 886, 887). In any event, upon the record viewed as a whole, we do not find that the alleged defects in the conduct of the trial constituted reversible error.

We have considered defendant's remaining contentions and find them to be without merit. Gibbons, J. P., Weinstein and Kunzeman, JJ., concur.

Brown, J., dissents and votes to reverse the judgment, as a matter of discretion in the interest of justice, and order a new trial, with the following memorandum, in which O'Connor, J., concurs.

In a close case such as this one in which the jury's assessment of the credibility of the witnesses was of paramount importance, it was imperative that the trial be conducted in as error-free a manner as possible (*see, People v McCann,* 90 AD2d 554). Therefore, in light of what I find to be sufficiently serious instances of prosecutorial misconduct, I cast my vote in favor of a new trial.

During cross-examination of defendant, the prosecutor repeatedly asked questions which forced the defendant to characterize the complainant as a liar. This court has condemned

such questions on numerous occasions (*People v Sepulveda,* 105 AD2d 854; *People v Brown,* 76 AD2d 932; *People v Mariable,* 58 AD2d 877) and, in my view, the prejudicial effect of such questioning in this case deprived the defendant of a fair trial.

Additionally, significant prosecutorial misconduct occurred during summation which may well have misled the jury in its deliberations. One of the witnesses called by the People was a Dr. Emma, who had examined the complainant two days after the incident for which defendant stands convicted. Dr. Emma testified that during his physical examination of the complainant he found no bruises or lacerations and only slight tenderness on her lower abdomen. He also said that during a pelvic examination he had observed that a portion of the hymenal ring was broken, but there was no evidence of bleeding. He stated that he could not determine with any degree of medical certainty when the break had occurred. He also testified that the speculum easily inserted into the 11-year-old complainant's vagina, which, in his opinion and experience, was unusual given her age, but that upon insertion neither internal laceration nor anything unusual was seen. When he palpated the cervix, he found a slight tenderness for which he could not attribute a cause. He acknowledged, however, that with a young girl, the tenderness could be attributed to her feeling uncomfortable about the vaginal examination.

During summation the prosecutor misrepresented Dr. Emma's testimony as corroborating and substantiating the complainant's version of the incident, going so far as to state that: "You heard him [Dr. Emma] testify as to the broken hymen and you heard him testify as to his professional opinion as to why all of this took place". In fact, however, Dr. Emma had offered no medical opinion as to whether complainant had been engaged in any sexual conduct at the time in question and had stated that he could not determine how or when the break in the hymenal ring had occurred and could not attribute a cause for the slight tenderness in the complainant's cervix.

While these instances of prosecutorial misconduct were not preserved for review as a matter of law, I consider them to have been sufficiently serious in the context of this trial to require that we exercise our interest of justice jurisdiction (CPL 470.15 [3] [c]). The circumstances and closeness of this case were such as to require that the jury in no wise be misled or inflamed as it carried out its function of assessing the sharply conflicting testimony of the defendant and his niece

(see, *People v Stewart,* 92 AD2d 226, 231; *People v Conner,* 69 AD2d 908; *see also, People v Alvarez,* 98 AD2d 777 [dissenting mem by Brown, J.]).