■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STANLEY RUDD, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Bonomo, J.), rendered March 3, 1983, convicting him of manslaughter in the first degree, murder in the second degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and as a matter of discretion in the interest of justice, a new trial is ordered on the second and third counts of the indictment, and the first count of the indictment is dismissed, without prejudice to the People to represent any appropriate charges to another Grand Jury (see, *People v Beslanovics*, 57 NY2d 726). The facts have been considered and have been determined to have been established.

The charges against the defendant arose from the fatal shooting of James Bost in a housing project in East New York. There were no eyewitnesses to the shooting. At trial, the People sought to prove that the defendant had shot and killed Bost and had taken a gold rope chain from his body. The expected proof was to be testimony from two of the defendant's friends, who had allegedly been told of the killing by the defendant shortly after the incident occurred.

The first of the defendant's friends to take the stand was David Pitts. Pitts admitted that he walked to a store with the defendant and some others on the evening of the murder. However, when asked whether the defendant had described a piece of jewelry to him and whether the defendant had shown him a gold rope chain, Pitts replied "Nope". A Bench conference then took place and the prosecutor advised the trial court that the witness was recanting his Grand Jury testimony. The prosecutor was then permitted, over objection, to use the Grand Jury testimony to impeach Pitts. The Grand Jury testimony was later read in its entirety to the jury. Pitts had told the Grand Jury that he had been shown a gold rope chain by the defendant and was told that the defendant had taken it from "some light-skinned dude". The defendant had also told Pitts that he "shot twice and made the dude run" .

Before the Grand Jury testimony was read to the jury, the court cautioned the jury that the evidence was to be used only for the purpose of evaluating Pitts's credibility and that it could not be used as direct evidence against the defendant. Pitts admitted that he gave the answers read to him by the prosecutor, but testified that he did not recall being shown a gold chain by the defendant. Pitts also stated that he had been beaten by police officers prior to testifying before the Grand Jury. He left the stand without giving any testimony that connected the defendant with Bost's death.

Later, another of the defendant's friends, Travers Bostick, was called as a witness by the People. Bostick, like Pitts, admitted that he had walked to a store with the defendant

and some others on the night of Bost's death. Bostick was then asked whether he recalled being shown something by the defendant or recalled being told anything by the defendant. He replied that he did not. The prosecutor was then permitted, over objection, to read aloud some questions and answers from Bostick's testimony before the Grand Jury. At the Grand Jury, Bostick had testified that, on the way to the store, the defendant had indicated that he had shot at a light-skinned person. Bostick had also seen a .22 caliber revolver in the defendant's pants. On the day after, Bostick saw the defendant with a gold rope chain that Bostick had never seen before. After being read the questions and answers and looking through the transcript of his Grand Jury testimony, Bostick stated that he could not remember giving those answers.

However, when court reconvened the next morning, Bostick had apparently had a change of heart and he testified in a manner consistent with his Grand Jury testimony. There were no other witnesses who connected the defendant with the shooting.

The defendant contends on appeal that the use of the witnesses' Grand Jury testimony for impeachment purposes was improper. This matter is governed by CPL 60.35, which permits a party to impeach its own witness with a prior oral statement under oath when the witness "gives testimony upon a material issue of the case which tends to disprove the position of such party" (see, CPL 60.35 [1]). The testimony must not only be inconsistent with the prior statement, but must also affirmatively damage the case of the party that called him (see, People v Fitzpatrick, 40 NY2d 44). A mere failure to recollect does not constitute the type of affirmative damage that will permit impeachment (see, People v Fitzpatrick, supra).

In the case of Pitts, we find that the impeachment was proper. Since the People's only evidence linking the defendant to Bost's death consisted of the defendant's alleged statements to his friends, Pitts's testimony at trial severely undermined the People's case and tended to contradict other evidence adduced by the People, specifically, the testimony of Bostick. Under these circumstances, the requirements for impeachment were met (see, People v Winchell, 98 AD2d 838, affd 64 NY2d 826; People v Davis, 112 AD2d 722).

The impeachment of Bostick was clearly improper, however. Bostick's initial trial testimony showed no more than a failure

to recollect and such testimony was neutral, did not affirmatively damage the People's case, and did not give rise to a right to impeachment *(see, People v Fitzpatrick, supra; People v Knatz,* 76 AD2d 889). The People have attempted to justify the examination of Bostick by arguing that he was not really "impeached" since he ultimately testified in a manner consistent with his Grand Jury testimony. Instead, contend the People, the Grand Jury testimony was used merely to prod Bostick's recollection.

Even if we were to accept this argument, the reading of Bostick's Grand Jury testimony in the jury's presence still would have been error since CPL 60.35 (3) provides that a prior sworn statement may not be used for the purpose of refreshing the recollection of a witness "in a manner that discloses its contents to the trier of the facts". Thus, the use of Bostick's Grand Jury testimony was clearly error and improperly bolstered the People's case. In the circumstances here, where the evidence was far from overwhelming, such error cannot be considered harmless.

Reversal is also required because of certain improper, irrelevant and prejudicial remarks made by the prosecutor in his summation. The prosecutor tried to explain the witnesses' reluctance to testify by telling the jury that the "vicious side of that reluctance" was that "they didn't want to do that and come out in open court and then return to those projects as someone who testified against a friend from those projects". This remark clearly implied that the witnesses faced physical danger because of their testimony and was, therefore, improper *(see, People v Sepulveda,* 105 AD2d 854). The prosecutor also made many irrelevant references to the projects where the killing took place, apparently suggesting that the defendant was somehow responsible for the "all too familiar" crime that occurred there. None of these comments was supported by any evidence and they served only to inflame the jury.

The prosecutor's most serious improprieties, however, dealt with his summary of the testimony at trial. Pitts did not give any testimony that inculpated the defendant and Bostick's testimony was that the defendant admitted "shooting at" a light-skinned person. The prosecutor summarized their testimony as follows: "But, if there is anyone more cold-hearted in this case than the two young men who came in and testified before you, Travers Bostick and David Pitts, young men who on the night of March 9, 1982, having heard this defendant describe in cold, in casual details, how he wasted a light-skinned dude all over a gold rope chain and then went with

him and drank beer in a hallway at Building 21—if there is anyone more cold-hearted in this case, it is the defendant, who, after shooting James Bost in the head and leaving him to die in that hallway, took that gold chain and rejoined his friends, bragging about it while James Bost stayed in the hallway and stayed in the hospital brain-dead for the next four days".

These comments, in addition to being inflammatory and a gross distortion of the trial testimony, also could have caused the jury to believe that Pitts's Grand Jury testimony could be used as evidence-in-chief. While we recognize that " '[r]eversal is an ill-suited remedy for prosecutorial misconduct' " *(People v Galloway,* 54 NY2d 396, 401, quoting from *United States v Modica,* 663 F2d 1173, 1184, *cert denied* 456 US 989), in this case the evidence against the defendant was not strong and the prosecutor's comments had the effect of denying the defendant his right to a fair trial *(cf. People v Roopchand,* 107 AD2d 35, *affd* 65 NY2d 837). Reversal is therefore required. Lazer, J. P., Niehoff, Lawrence and Kooper, JJ., concur.