■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY GRUBBS, Appellant.—Judgment, Supreme Court, New York County (Leff, J., at jury trial and sentence), rendered on or about September 11, 1984, convicting defendant of the crimes of attempted sodomy in the first degree and sexual abuse in the first degree, reversed, on the law, and a new trial ordered.

We would reverse based upon the prosecution's improper bolstering of the complainant's identification testimony.

In the early morning hours of April 7, 1984, complainant was the victim of an attempted rape. She was accosted at knifepoint in the elevator of her apartment building by a black male whom she described as 5 feet, 8 inches tall, 160 to 165 pounds, wearing a greyish-black three-quarter length coat and two chains with charms on them. Three days later, on April 10, 1984, she saw a man resembling her attacker in a subway station. She testified that upon seeing the suspect, she "froze for a minute." On April 12, she returned to the vicinity accompanied by Detective Jamie Gonzalez. The complainant identified the defendant as he entered the subway station from the street, and the defendant was subsequently arrested.

The complainant again testified that she "froze" upon recognizing her alleged assailant at the time of his arrest.

Detective Gonzalez testified about the complainant's reactions on redirect examination as follows:

"Q. [Prosecutor] Now, when you first spotted the defendant on that morning, was Miss Valentin with you?

"A. [Detective Gonzalez] She was the first one to spot him.

"Q. Without telling what she said or anything, did you observe what she did when the defendant came in your view?

"A. She became very, very nervous.

"Q. What do you mean by that?

"A. She started breathing heavy, saying, 'oh my God.' Very upset.

"Q. Anything else about her facial features that occurred?

"MR. WHITE: Objection.

"THE COURT: Overruled.

"Q. That you noticed?

"A. Yes. Later on, when I was in the state of apprehending the defendant.

"Q. What was she doing then, without telling us what she said, what was she doing?

"A. She appeared to have gone into shock.

"MR. WHITE: Objection.

"THE COURT: Overruled.

"Q. Why did you say that? What did you notice?

"A. She was standing very stiff, shaking. Her mouth was wide open. Her eyes were wide open."

The sole reason for eliciting Detective Gonzalez's observations of the complainant's physical reactions upon viewing the accused was to bolster her identification testimony. The admission of such testimony was error. (*People v Trowbridge,* 305 NY 471.) It is of no consequence that the detective described only the physical reaction of the complainant and did not relate any oral statement or contemporaneous utterance made by her at the time of the arrest. (*People v Mobley,* 56 NY2d 584.) The witness' statements to the effect that the complainant became nervous and upset and appeared to go into shock were undoubtedly meant to convey complainant's fear and revulsion upon confronting the person who had sexually assaulted her. As such, his testimony tended to reinforce the trustworthiness of the complainant's in-court identification of defendant as the perpetrator, the sole testimony on that issue presented by the prosecution on its direct case.

Once error is assigned with regard to the improper admission of bolstering testimony, it is necessary to analyze such error to determine if, under the totality of the circumstances, it was harmless or was of sufficient prejudicial effect as to warrant a new trial. Two considerations are presented: (1) whether the proof of defendant's guilt is overwhelming without reference to the improper testimony, in which case the harmless error doctrine need not be considered; and (2) whether a substantial probability exists that the jury would have acquitted defendant but for the erroneous testimony. (*People v Johnson*, 57 NY2d 969; *People v Crimmins*, 36 NY2d 230; *People v Perez*, 100 AD2d 366.) The standard of proof under the first consideration concerning the weight of the nonerroneous evidence of the defendant's guilt (in this case the identity of the defendant as the perpetrator) is whether " 'the evidence of identity is so strong that there is no substantial issue on the point' ". (*People v Mobley, supra*, at p 585; *People v Malloy*, 22 NY2d 559; *People v Johnson, supra*.)

Applying these principles to the circumstances at bar, we conclude that a new trial is warranted. Identification was the critical issue at trial. Defendant was not arrested until several days after the incident, wearing clothing dissimilar to that of the assailant. Both defendant and his mother testified that he did not own a three-quarter length coat or chains as described by the complainant. The identification of defendant as the assailant was suspect inasmuch as he had been living in the same apartment building as the complainant since 1961, and she had never seen her attacker before the incident. His mother, with whom defendant resided, testified that defendant was asleep at home at the time when the attempted rape occurred.

In light of the defense testimony, the issue of identity of defendant as the perpetrator was of paramount importance. Furthermore, we conclude that there was a significant probability that the jury would have acquitted defendant but for the detective's testimony. Its crucial relationship to the prosecution's case is evidenced by the prosecutor's dramatization of it in summation as follows: "And then you heard how she reacted a few days later. You heard the detective describe it. The reaction she displayed when she saw her assailant again, something sort of telling about that. It's not just someone saying that's the guy, but something without getting psychological, something almost subconscious about it. Her whole body reacted. Her whole body confirmed that which she had

seen. She shuttered [*sic*], her mouth opened up. There he was. He was being taken into custody."

The People's emphasis on the detective's bolstering testimony as well as its highly prejudicial nature mandates a new trial. We would also note that the closure of the courtroom by the trial court was improper. On appeal, the People concede that the court below failed to set forth its reasons for such closure and request that the instant appeal be held in abeyance pending a remand so that the reasons underlying the closure may be explained on the record. In light of our holding that a new trial be had, it is unnecessary to make any direction in this regard. We would indicate, however, that the court's mere reliance upon Judiciary Law § 4 was an insufficient predicate for closure. (*People v Jelke,* 308 NY 56.) As stated by the Court of Appeals, "no closing can be tolerated that is not preceded by an inquiry careful enough to assure the court that the defendant's right to a public trial is not being sacrificed for less than compelling reasons." (*People v Jones,* 47 NY2d 409, 414-415.) Concur—Murphy, P. J., Asch, Fein and Milonas, JJ.

Sandler, J., concurs in a memorandum as follows: I agree that defendant's conviction for attempted sodomy in the first degree and sexual abuse in the first degree must be reversed because of the trial court's failure to conduct an inquiry of the kind found constitutionally required by the Court of Appeals in *People v Jones* (47 NY2d 409) before closing the courtroom during the testimony of a complaining witness.

I reach this conclusion reluctantly because it is apparent that the circumstances known to the trial court justified the action taken, and it is by no means clear to me that the situation presented by the testimony of the victim of a sex offense is comparable to that presented by an undercover police officer. However, no relevant authority appears to exclude the testimony of the victim of a sexual assault from the requirement of an inquiry on the record before closing the courtroom.

I do not agree with the court's analysis of the "bolstering" issue. The question seems to me of sufficient interest to merit comment.

Preliminarily, I am not convinced that any bolstering violation in fact occurred. As was made clear by the Court of Appeals in *People v Trowbridge* (305 NY 471), the bolstering rule is a particular application of hearsay principles. Although the issue is not free from doubt, I believe that the challenged

testimony of the police officer would come within the excited utterance exception under the principles set forth by the Court of Appeals in *People v Edwards* (47 NY2d 493). Significantly, *Edwards* (at p 498) cited with approval *United States v Napier* (518 F2d 316, 318 [9th Cir 1975], *cert denied* 423 US 895), a case in which the court found admissible as an excited utterance an out-of-court identification by the victim of a violent crime who unexpectedly observed the defendant's picture in a newspaper, and in a state of agitation identified the picture as that of her assailant. Although the facts here are not as compelling for the application of the excited utterance principle as they were in *Napier*, I believe that what occurred here does come within that exception to the hearsay rule.

Moreover, there are occasions, and this trial discloses such an occasion, in which the circumstances surrounding a pretrial identification are clearly relevant to an evaluation of the credibility of the witness. In such a situation it would seem a clear error to exclude what would be otherwise unobjectionable, relevant testimony as to the circumstances because it was implicit in such testimony that a witness had made an identification.

Assuming that what occurred was in fact a violation of the bolstering principle, I do not believe that the defendant was prejudiced by the officer's testimony to the extent that the officer confirmed that the complaining witness had made a pretrial identification of the defendant. Indeed, I find it difficult to envisage a situation in which a jury's determination of guilt or innocence would in any way be affected by the testimony of one or two witnesses confirming a prior identification by an identifying witness who testified to that identification at the trial. If the fact of the prior identification is not in issue, the reference to it by one or two witnesses is normally, at best, an innocuous confirmation of a fact not in issue. If the fact of the prior identification is in issue, such testimony would clearly be relevant and admissible.

No doubt a different problem would be presented if the prosecutor were permitted to elicit testimony with regard to a prior identification by a number of witnesses. That problem is not presented here. It is true that in *People v Trowbridge* (*supra*), the Court of Appeals reversed in a situation where only one witness gave "bolstering testimony" with regard to a prior identification. But a study of that opinion makes it clear that the court majority was influenced by very severe doubts, which were painstakingly detailed in the opinion, as to the

reliability of the evidence that had been presented against the defendant.

The more troublesome problem with regard to the challenged testimony of the police officer seems to me one of relevance, not one of hearsay or bolstering. The testimony was apparently elicited on the assumption that the agitation of the complaining witness on observing the person she believed to have been her assailant in some way added to the reliability of her identification. This might well be so if a trial issue was presented as to the truthfulness of the witness. It is not at all clear that such an inference is a reasonable one where the only issue raised relates to the accuracy of the identification. The question of the relevance of the testimony—that is, its probative force weighed against its possible prejudice—was not argued on the appeal, and I think it is a close one. On balance, I believe that the officer's testimony with regard to the emotional reaction of the complaining witness on observing the defendant, something to which the witness herself had testified, gave excessive weight to evidence of doubtful value and provides a separate basis for reversing the conviction.