OPINION OF THE COURT
Meyer, J.
For other crime evidence to be admissible on the issue of identity, the identity of defendant as the perpetrator of the *545 other crime, if not conceded or previously adjudicated, must be established by clear and convincing evidence. Because the only evidence connecting defendant with a prior bank robbery —the similarity of some of the clothing worn and how it was worn, of the wording of the notes handed the teller and the writing on the notes, in the two robberies — was insufficient to permit introduction of the highly prejudicial prior crime evidence presented, and because of additional trial errors detailed below, there should be a reversal of the Appellate Division’s order affirming defendant’s conviction, and a new trial.
I
On December 12, 1978, Lettie Pinney, a teller at the Central Avenue branch of Home Savings Bank in Albany was handed a large manila envelope upon which there was a letter-size white envelope covered by a yellow withdrawal slip. She approximated the height of the man who handed it to her as over five and a half feet and his age as in his twenties, and testified that he had a light brown moustache, a dark colored knit hat pulled down almost to his eyebrows, a dark colored scarf pulled up to his chin, wore a tan coat and a knit glove on the hand with which he handed her the envelope, and carried a dark colored rectangular briefcase under his arm. Another bank customer, standing in the line of the teller next to Ms. Pinney, saw the note being passed, but as he turned toward that line the man was halfway to the door. He described the man as approximately six-feet tall, wearing a dark scarf that hung down his back and had come completely around his face, and a dark, loosely fitting coat that came down to between his waist and his hips. However, at the trial neither the teller nor the customer was able to identify defendant as the individual who presented the note, and the video tape pictures taken by the bank’s surveillance cameras were too blurred and the portion of the perpetrator’s face too limited to permit positive identification from them.
Printed on the white envelope was:
"this is a holdup
"your life is in
"danger
"put 100s 50s 20s in bag
"keep hands in sight
"at all times”.
*546 After reading the note, the teller asked, "What do you want me to do with this?” and, receiving no response, handed the note to the next teller, whereupon the man walked rapidly toward the door. The police were not called until about 10 minutes later, the tellers being undecided whether the incident was a joke or a real holdup.
After the presentation of Ms. Finney’s testimony, the People moved under People v Molineux (168 NY 264) for permission to present evidence of the successful robbery on December 5, 1978 of the Central Savings and Loan Association, also located on Central Avenue in Albany, which, it was argued, involved the same modus operandi as that used in the Home Savings robbery attempt and was being offered both to establish identity and, with respect to intent, to show that the Home Savings incident was not a hoax. The motion was granted on both grounds, subject to foundation proof. Testimony was then presented by Vickie Owens, a teller at Central Savings, the court having first instructed the jury concerning the limited purposes for which the testimony was being received, that on December 5, 1978, a white male of medium build, about 5 feet 10 inches tall and weighing approximately 160 to 170 pounds, who had a reddish brown moustache, freckles and brown eyes, wore a navy blue pea coat and a blue ski cap and had a navy blue scarf pulled up to his upper lip, had handed her two envelopes, one a white envelope of standard size, the other a brown manila envelope. On the white envelope printed in pencil was the following note:
"THIS IS A HOLDUP!
"YOUR LIFE IS IN
"DANGER
"PUT 100s 60s 20s IN BAG
"REMAIN CALM FOR
"YOUR OWN SAFETY”.
She placed $1,830 in the manila envelope and as the man walked away activated the bank’s surveillance camera. She was, however, unable to identify defendant as the robber and the surveillance photographs, introduced in evidence, were, like those from the Home Savings incident, either blurred or of too limited a portion of the perpetrator’s face to permit identification.
Testimony was also presented, through a State Police document analyst, that the hand printing on both of the notes was *547 the same as that on the student loan, financial and manpower applications filed by defendant with the State University at Albany (SUNYA), where defendant was a student, and through an FBI fingerprint specialist that three of the prints lifted from the Homes Savings note and one from the Home Savings manila envelope matched defendant’s fingerprints on his police arrest card. Defendant’s former girlfriend testified that defendant was a compulsive gambler, that she had loaned him $1,900 and that in the late afternoon or evening of December 5, 1978 he had repaid her $500, giving her two $50 bills and the rest in $20s.
Defendant introduced testimony of his roommate and another student that at the time of the Home Savings robbery attempt defendant was in his dormitory room reading a book and conversing with other students. He also presented the expert opinion of the retired deputy director of the State Identification and Intelligence System that the fingerprints taken from the Home Savings envelopes did not provide sufficient ridge characteristic data upon which to base an identification against an inked print and that none of them were identifiable as those of defendant.
The jury found defendant guilty of attempted robbery in the third degree (Penal Law §§ 160.05, 110.00). On appeal to the Appellate Division, that court affirmed in an opinion (114 AD2d 120), holding, among other things, that identity was a crucial issue and the conduct of the two crimes was sufficiently unique to permit proof of the uncharged Central Savings robbery. The matter is before us by leave of a Judge of this court (67 NY2d 949). Before us defendant raises a number of issues in addition to the Molineux question. Because we conclude that error on that question requires reversal and a new trial, we set forth below our reasons for that conclusion and pass on only such other questions raised by defendant as can be expected to arise upon retrial.
II
The Molineux rule excludes evidence of uncharged crimes when the danger that the jury may, on the basis of such testimony, convict, even though not convinced of defendant’s guilt of the crime charged beyond a reasonable doubt, is not overcome by the probative value of the prior crime evidence in relation to the crime now charged (People v Ventimiglia, 52 NY2d 350, 359-360; People v Santarelli, 49 NY2d 241, 247). So *548 where defendant’s identity as the perpetrator of the crime for which he is on trial "is conclusively established,” evidence of a prior crime, though committed in the same unique manner as the crime for which defendant is being tried, is not admissible (People v Condon, 26 NY2d 139, 142 [italics in original]). But where the defense is mistaken identity and the testimony of the single eyewitness is extensively impeached, evidence of an uncharged crime is admissible (id., at p 142; People v Beam, 57 NY2d 241, 251), provided the modus operandi is so unique as to make the evidence highly probative (People v Allweiss, 48 NY2d 40; People v Condon, supra, at p 144).
What has not been sufficiently established by our case law is the degree to which defendant’s identity as the perpetrator of the uncharged crime must be established in order to make proof with respect to it admissible. Molineux stated the obvious in noting that (168 NY, at p 316) "an inference [of identity] might be justified if it had been shown conclusively that the defendant had killed [the victim of the uncharged cyanide poisoning murder] and that no other person could have killed [the present cyanide poisoning victim]”, but held that no such evidence had been given; People v Allweiss (supra) involved a defendant who had pleaded guilty to a number of prior uniquely committed rapes; and, at the other end of the spectrum, People v Johnson (47 NY2d 785, cert denied 444 US 857) held it without probative value on defendant’s case that the victim of another rape committed under similar circumstances could not identify him.
Wigmore, Evidence (Chadbourn rev ed) appears to accept a conclusiveness standard (vol 2, at 259 ["To identify a defendant as the perpetrator of the crime charged, it may become necessary to show former conduct of his, known to be the conduct of the perpetrator”] [emphasis supplied]), while the Second Circuit, at least with respect to willfulness, has held that a preponderance standard is sufficient (United States v Leonard, 524 F2d 1076, 1091, cert denied 425 US 958; see, United States v Smith, 727 F2d 214, 220).
Neither the Federal Rules of Evidence (rule 404 [b] [in 28 USC Appendix]) nor the proposed New York Code of Evidence (§404 [b]) indicates the precise standard for admissibility of other crime evidence to prove identity, but the majority of Federal cases that have considered the question have analyzed it in terms of the Trial Judge’s discretion and in that context have held that the proof as to the uncharged crime must be. *549 clear and convincing (United States v Horvath, 731 F2d 557, 560; United States v Gilmore, 730 F2d 550, 554; United States v Bailleaux, 685 F2d 1105, 1110; United States v Shelton, 628 F2d 54, 56; United States v Robbins, 613 F2d 688, 693; United States v Bussey, 432 F2d 1330, 1335). Even the Fifth Circuit, which in United States v Beechum (582 F2d 898, cert denied 440 US 920), in overruling on the issue of intent a prior clear and convincing holding, was careful to note (582 F2d, at p 912, n 15) its holding in an identity case that a " 'much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind.’ ”
Commentators are likewise in disagreement. McCormick, Evidence (3d ed) states that guilt of the other crime need not be proved beyond a reasonable doubt, thus disagreeing with Wigmore, but then notes that the applicable standard "is variously described, including 'substantial’ and 'clear and convincing’ ” (§ 190, at 564). And the authors of Lempert and Saltzburg, A Modern Approach to Evidence (at 222-224 [2d ed]), disagree between themselves as to whether clear and convincing or preponderance is the proper measure, and whether the same standard should be applied in all cases in which other crime evidence is sought to be introduced.
To make evidence of a prior uncharged crime relevant, there must be more than a unique method involved, for, as Molineux long ago stated, "the naked similarity of * * * crimes proves nothing” (168 NY, at p 316). The probative value of such evidence is, therefore, dependent upon showing not only that the method used is sufficiently unique to make it highly probable that both crimes were committed by the same individual, but also upon proof that defendant was the perpetrator of the uncharged crime. To be balanced against probative value as thus defined is the possible prejudice to defendant.
Prejudice involves both the nature of the crime, for the more heinous the uncharged crime, the more likely that jurors will be swayed by it, and the difficulty faced by the defendant in seeking to rebut the inference which the uncharged crime evidence brings into play (see, People v Bay, 67 NY2d 787, 789; Weissenberger, Making Sense of Extrinsic Act Evidence: Federal Rule of Evidence 404 [b], 70 Iowa L Rev 579, 605 if). Defendant will, of course, be entitled upon request to *550 an instruction, both when the uncharged crime evidence comes in and at the end of the case, concerning the limited purpose for which the evidence is being admitted (see, 1 CJI [NY] 12.20). But to the extent that the evidence of defendant’s identity as the perpetrator of the uncharged crime is unclear, or is called into question by defendant’s rebuttal evidence, the case becomes a trial within a trial[1] which may result in jury confusion.
The foregoing analysis leads us to conclude that a Trial Judge who admits evidence of an uncharged crime on the issue of identity on less than clear and convincing proof of both a unique modus operandi and of defendant’s identity as the perpetrator of the crime abuses his discretion as a matter of law. And applying that standard, no other conclusion is possible than that the evidence of the Central Savings holdup, for which at the time of defendant’s trial on the Home Savings attempted robbery he had not been tried, was erroneously admitted. Indeed, the People’s offer of the evidence was correctly characterized by defendant’s trial attorney as a bootstrap attempt, for the evidence connecting defendant with the Central Savings robbery was even more tenuous than that “identifying” him as the Home Savings perpetrator. No fingerprints, however inconclusive, were obtained from the Central Savings envelopes, nor was anyone there present able to identify defendant. Although the clothing was similar and was similarly positioned and the Central Savings robber was of generally similar physique as the Home Savings perpetrator and passed a similarly worded note, the only evidence that could be said to relate defendant to the Central Savings robbery was the expert testimony that the hand printing on the two notes was the same as was present on the college applications defendant filled out. Whether that evidence alone, if wholly undisputed, would be a sufficient predicate for admission of the Central Savings evidence (cf. Matter of Sylvestri, 44 NY2d 260, 266) we need not decide for, as already noted, the People’s expert’s handwriting testimony was vigorously contested on cross-examination. There must, therefore, be a reversal and a new trial.
*551 Ill
Because the issues may be expected to arise again upon a new trial, we comment briefly on defendant’s contentions that the jury pool was tainted by the exclusion of college students; that his motion to suppress the physical evidence seized from his dormitory room was improperly denied; and that the circumstantial evidence charge given, and to which defendant excepted, was inadequate.[2]
As to the jury pool, the Appellate Division correctly held that there was no showing that college students as a particular group were deliberately excluded from the pool (People v Shedrick, 66 NY2d 1015).
The warrant for the search of defendant’s person and dormitory room was issued on the basis of an affidavit which detailed the Home Savings incident and stated that a fingerprint lifted from the note had been positively identified as defendant’s left middle finger, and that a SUNYA police officer had stated that defendant fit the description of "the suspect.” It specified the property sought as a maroon knit hat, brown scarf, blue nylon ski parka with silver snaps, dark briefcase, black leather gloves, manila and white envelopes and brown crepe-soled work shoes. The bases of defendant’s motion to suppress were that the application did not specify, as required by CPL 690.10 (4) and 690.35 (2) (b), that the property sought constituted evidence of the Home Savings offense (indeed, the People conceded at the suppression hearing that the articles of clothing sought related to the Central Savings robbery and were not connected to the Home Savings incident) or that there was reasonable cause to believe that the items sought could be found in defendant’s dormitory room. The suppression Judge held that there was probable cause and that the briefcase, manila envelopes and plain white envelopes were of direct evidentiary value in relation to the Home Savings incident. He deferred ruling as to the clothing items until trial, but they ultimately were admitted.
As we held in People v Hanlon (36 NY2d 549, 559), search warrants, which are composed not by lawyers but by *552 police officers acting under stress, are not to be read hyper-technically and may be "accorded all reasonable inferences.” Given the nature of the items sought and the identification of the place to be searched as defendant’s living quarters, "it was entirely reasonable to deduce” that the items sought would be found there (People v Wheatman, 29 NY2d 337, 346, on later appeal 31 NY2d 12, cert denied sub nom. Marcus v New York, 409 US 1027, reh denied 409 US 1119). CPL 690.35 (2) (b) does not require suppression, therefore.
The more troublesome question involves the failure to inform the issuing magistrate that some of the items sought were involved not in the Home Savings incident upon which the application was based but in an entirely separate incident. While we certainly do not condone that failure, we agree that, under the severability principle stated in People v Hansen (38 NY2d 17, 21-22), the briefcase and the envelopes which were involved in both incidents need not have been suppressed. The remaining items should have been suppressed and on retrial should be excluded.[3]
For the foregoing reasons, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.

. Whether the jury must be explicitly instructed as to defendant’s identity as perpetrator of the uncharged crime, as is done with respect to handwriting (People v Molineux, 168 NY 264, 329-330), or to the voluntariness of a confession (see, People v Cefaro, 23 NY2d 283; 1 CJI [NY] 11.01), is an issue we need not reach on the present record.

. Defendant also contends that evidence concerning his gambling and failure to repay loans involved other crimes and was unfair. We need not pass on the question, for it related to the Central Savings Bank robbery, evidence as to which will be inadmissible on retrial unless the People are able to present additional evidence as to the identity of defendant as its perpetrator.

. In view of the retrial we do not pass upon the People’s harmless error argument except to note that the suggestion that exhibit 20, a cap, was owned not by defendant but by his roommate, not having been made at the suppression hearing, cannot now be urged (People v Havelka, 45 NY2d 636, 643), and that, in view of the People’s concession noted above, the fact that a scarf and leather gloves (exhibits 19 and 21) were used in both incidents comes too late (id,.).