■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD MATTHEWS, Appellant.—Judgment, Supreme Court, Bronx County (Frank Diaz, J.), rendered May 30, 1989, convicting defendant after a jury trial of rape in the first degree, sodomy in the first degree, and robbery in the first degree, and sentencing him to concurrent, indeterminate terms of imprisonment of twelve and one-half to twenty-five years, to run consecutively to a previously unrelated imposed sentence of twenty-five to fifty years, unanimously affirmed.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONNIE MATTHEWS, Appellant.—Judgment, Supreme Court, New York County (Harold Rothwax, J.), rendered August 29, 1988, convicting defendant after a jury trial of seven counts of robbery in the first degree, two counts of sodomy in the first degree, two counts of rape in the first degree, and one count of sexual abuse in the first degree, and sentencing him to a combination of consecutive and concurrent sentences aggregating eighty-seven and one-half to one hundred seventy-five years, which, reduced pursuant to Penal Law § 70.30 (1) (c) (iii), is deemed to aggregate to twenty-five to fifty years, affirmed.

Defendant was convicted after trial of committing seven separate incidents, of robbery and sexual assault. The crimes occurred in city housing projects in upper Manhattan, two in the same building, between September 13 and December 22, 1987. Most of the incidents commenced with the knife point robbery of the victim's jewelry, and culminated in a sexual assault or abuse in a stairwell or rooftop. Each of the victims identified defendant at a lineup, and all but one identified him at trial.

Defendant was not entitled to separate trials. The motion,

made as the trial was about to begin, was untimely. (CPL 255.20 [1], [3]; *People v Kehn,* 109 AD2d 912.) Moreover, the various counts in the indictment were not subject to a severance for "good cause shown" (CPL 200.20 [3]). The attacks were marked by a sufficiently unique *modus operandi* to support joinder under CPL 200.20 (2) (b).

We do not find that the prosecutor committed error in summation. As noted, the counts were joinable, and as proof of one attack was admissible as proof of another, argument on that basis was eminently reasonable. Defendant also claims that the prosecutor improperly reminded the jury of his prior conviction for sodomy, but the prosecutor's argument that defendant's criminal past showed that defendant would not hesitate to place his self-interest above that of society was not outside the bounds of propriety.

We find without merit defendant's related claim that the court should not have told the jury that the People urged that the way the crimes were committed suggested that the same person committed them. The court's comment was accurate, and, since joinder on the basis of *modus operandi* was appropriate, the comment was equally appropriate. Nor is defendant entitled to a reversal because the court did not read each of the counts to the jury. The law regarding each of the similar charges that differed only as to date and victim was the same, and the court did give the jury appropriate advice to render a separate verdict as to each count.

There is no merit to defendant's claim that he was entitled to CPL article 710 notice that his parole officer was going to testify that defendant had told him that defendant lived with his godmother at an address in upper Manhattan. The Court of Appeals has reserved deciding the issue whether the nature of the parole officer-parolee relationship is such that even routine, noncustodial questioning must be preceded by *Miranda* warnings if the questioning is concerned with possible criminal activity. *(People v English,* 73 NY2d 20, 24.) However, the officer's testimony was limited to pedigree information which is not subject to the *Miranda* rule. *(People v Rivera,* 26 NY2d 304, 309.)

We also find that the trial court did not abuse its discretion at sentencing. Concur—Milonas, Ellerin, Kupferman and Rubin, JJ.

Murphy, P. J., dissents in a memorandum as follows: The defendant was tried upon a twelve count indictment. The charges in the indictment were based upon seven separate

incidents, each involving a different complainant. The incidents were in some respects similar. The assailant accosted each of his victims in the elevator of a New York City Housing Authority apartment building. The attacks uniformly began as knifepoint robberies and, in several of the incidents, escalated into sexual assaults committed either in a stairwell or on a roof landing.

In her summation the prosecutrix, over objection, urged the jury to consider the entire body of evidence in proof of each count of the indictment. She stated "all of these crimes had to be committed by the same person". She explained, "we know this from all the particularities of the crimes. The pattern of what this defendant did in a series [objection overruled]". Before the close of her summation, she would reiterate, "[I]t had to be the same person that committed all of these crimes from the pattern and description [objection overruled]".

The trial court in its charge did not instruct the jury to consider the proof of each incident separately. Rather, the court emphasized that the People had proceeded upon the theory that the crimes had been committed in such a way as to suggest that they had been committed by the same person.

As a general matter a person may not be convicted of one crime based upon proof of another *(see, e.g., People v Molineux,* 168 NY 264, 291-293; *People v Alvino,* 71 NY2d 233, 241). Accordingly, when several factually distinct offenses are joined in the same indictment, the trial court is ordinarily bound to instruct the jury that the proof of each offense is to be considered separately and that the defendant's commission of one offense is not to be taken as proof of another crime charged *(see, People v McNamee,* 71 AD2d 559; *People v Harris,* 51 AD2d 937; *People v Range,* 49 AD2d 832). The only exception to this rule is where the proof of one offense charged is, in fact, relevant to the proof of some element of another. In that case, joinder would be permitted, and presumably would be effectuated, pursuant to CPL 200.20 (2) (b) which provides that offenses are joinable when "proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first".

It is not clear from the record presented on this appeal on what theory the various counts in the subject indictment were initially joined, nor is it clear on what grounds the defendant's pretrial motion for severance was denied. It is, how-

ever, quite clear that by the end of the trial both the People and the court were proceeding as if joinder had been accomplished within the authority of CPL 200.20 (2) (b). Indeed, if the proof of each offense had not been "material and admissible" as evidence in chief upon a trial of the other offenses, as provided by CPL 200.20 (2) (b), both the prosecutrix's summation and the court's charge would have been seriously in error. The basic question, then, in evaluating the propriety of the People's summation and the court's charge is whether there is some evidentiary theory pursuant to which the facts relevant to each of the seven separate incidents underlying the indictment may be said to be mutually probative. The theory advanced by the People is that the several assaults were so similar in the manner of their commission as to be cumulatively probative of the assailant's identity.

Evidence of the modus operandi employed in the commission of separate crimes is, of course, relevant to establish the identity of the perpetrator, but only when the modus operandi is sufficiently unique to make it highly probable that the same person has committed each crime (see, People v Robinson, 68 NY2d 541, 549). In an effort to come within this exception to the general prohibition against using one crime as proof of another, the People point out that each victim was accosted at knifepoint in a housing project elevator and thereafter robbed as a prelude to a sexual assault. The People further point out that all of the incidents occurred within a three month period and that the housing projects in which they took place were located in "a distinct geographic area".

The sad fact is that although the incidents share certain similarities, there is nothing particularly unique about them. Assaults upon lone women in apartment building elevators culminating in rape or some other form of sexual attack are tragically common. Indeed, the pattern of the seven incidents at bar mirrors that of numerous other attacks upon women in this jurisdiction (see, e.g., People v Wheeler, 67 NY2d 960; People v Acevedo, 32 NY2d 941; People v Ennis, 30 NY2d 535; People v Hache, 174 AD2d 309; People v Moyd, 162 AD2d 271; People v Clark, 161 AD2d 446; People v Allen, 140 AD2d 229; People v Larmond, 139 AD2d 668; People v Odom, 130 AD2d 776; People v Richards, 128 AD2d 387; People v Grubbs, 112 AD2d 104; People v Washington, 111 AD2d 418; People v Valdivia, 108 AD2d 885; People v Grant, 108 AD2d 823; People v McCann, 90 AD2d 554; People v Dozier, 85 AD2d 846; People v Best, 73 AD2d 651). Characterizing these sorts of attacks as sufficiently unique to establish the

identity of the assailant raises the very real possibility that one defendant will be prosecuted for the crimes of others. This possibility is not diminished in the present case by the fact that the assaults occurred within a three month period or by the People's arbitrary designation of upper Manhattan as a "discreet geographic area". There were doubtless many more than seven such incidents in upper Manhattan during the three months in question. Based upon the People's rather minimal notion of uniqueness, the defendant might have been charged with all of them. Nor does the circumstance that all of the attacks were committed in housing projects appreciably enhance the claim of uniqueness; with one exception, all of the incidents occurred in different and distantly separated apartment complexes, some of which were located in altogether different neighborhoods.

In the end, the People have shown no more than that the various incidents were in some respects similar; they have not shown that they were unique and certainly have not shown that they were so unique as to indicate an identical perpetrator. It was long ago observed and has since been reiterated that " 'the naked similarity of * * * crimes proves nothing' *([People v Molineux, supra]*, at p 316 )" *(People v Robinson,* 68 NY2d 541, 549, *supra).* Rather, for similar crimes to be probative of identity they must be shown to be "sufficiently unique to make it *highly probable* that both crimes were committed by the same individual" *(People v Robinson, supra,* at 549 [emphasis added]). As Judge Wachtler explained, writing for the Court of Appeals in *People v Allweiss* (48 NY2d 40, 47-48), "[I]t is not sufficient to show that [a defendant] has committed similar acts if the method used is not uncommon. Simply categorizing the defendant as one of many criminal specialists would be of little probative value in determining whether he committed the crimes charged * * * There must be some additional factor to set the defendant's crimes apart from the ordinary so that 'the mere proof that the defendant had committed a similar act would be *highly probative* of the fact that he committed the one charged' *(People v Condon,* [26 NY2d 139,] 144; see, also, *People v Kennedy,* 27 NY2d 551; McCormick, Evidence, § 190)." (Emphasis added.)

There is in this case no "additional factor" to set the crimes charged in the indictment pursuant to which the defendant was tried apart from the ordinary; as noted, these crimes are sadly among the most familiar sorts of offenses committed. This case, then, stands in sharp contrast to the leading cases in which "sufficient uniqueness" was found. In *People v All-*

*weiss (supra,* at 46), for example, the defendant consistently exhibited a fetish for lingerie and told his victims bizarre stories about the rape and murder of his wife and fiancee. And, in *People v Beam* (57 NY2d 241, 252), the defendant repeatedly used marijuana to lure his victims to secluded areas where he forced them to engage in distinctively similar homosexual acts. Comparably unique behavior is simply not to be found in the incidents encompassed by the present prosecution.

As the People have not shown the offenses charged to be sufficiently unique as to be probative of the assailant's identity, and there is no other evidentiary theory pursuant to which the various separate offenses would be mutually probative, it follows that the counts in the indictment upon which the defendant was tried were not joinable under the authority of CPL 200.20 (2) (b). It also follows that the prosecutrix ought not to have been permitted to argue that the crimes were so similar that they had to have been committed by the same person, and that the court should not have put the case to the jury on that theory.

It is questionable whether even an appropriate charge would have assured the defendant a fair trial. As Justice Silverman of this Court once observed in circumstances remarkably similar to those at bar: "Given a trial in which the defendant is charged with eight similar robberies with a knife in the elevators of public housing projects, I question whether any jury can realistically be expected not to be influenced in its consideration of any one criminal incident by the evidence linking the defendant to the other seven. I do not think even the most painstaking instructions, and the most laborious (to the court and perhaps to the jury) marshalling of the evidence can cure this. Eight similar robberies in one trial is just too much" *(People v Harris,* 51 AD2d 937, *supra* [Silverman, J., concurring]).

It may well be that only the grant of the defendant's motion for severance would have assured him a fair trial. It is, however, certain that the trial court's acquiescence in the People's erroneous theory of the case foreclosed any possibility of a fair adjudication. In the final analysis, the sole evidence fairly implicating the defendant in each of the seven attacks was the identification testimony of each victim. But single witness identifications, standing alone, are almost never considered overwhelming proof of guilt, and, in this case, while some of the identifications were quite strong others were less so; one of the victims was unable to make an in-court identifi-

cation and another had provided a description of her assailant which in some significant respects failed to correspond to the defendant. Had the jury been precluded by means of severance, or at least by a charge directing the careful segregation of the evidence applicable to each count, from considering the evidence of all the similar incidents as mutually probative, it is entirely possible that the verdict would have been different upon some of the counts. The evidence of the defendant's repeated predations upon young women was, in the end, probative of very little except what must have appeared to the jury to be a predisposition to such utterly loathsome conduct.

In discussing the identity exception to the general rule prohibiting the admission of "other crimes" evidence, the *Molineux* court noted that the exception was rarely invoked and then only with the greatest caution because of the great capacity of evidence of merely similar crimes to cause undue prejudice: "There are not many reported cases in which this exception seems to have been affirmatively applied. A far larger number of cases, while distinctly recognizing its existence, have held it inapplicable to the particular facts then before the court. The reason for this is obvious. In the nature of things there cannot be many cases where evidence of separate and distinct crimes, with no unity or connection of motive, intent or plan, will serve to legally identify the person who committed one as the same person who is guilty of the other. The very fact that it is much easier to believe in the guilt of an accused person when it is known or suspected that he has previously committed a similar crime proves the dangerous tendency of such evidence to convict, not upon the evidence of the crime charged, but upon the superadded evidence of the previous crime. Hence our courts have been proverbially careful to subject such evidence to the most rigid scrutiny, and have invariably excluded it in cases where its relevancy and competency was not clearly shown." *(People v Molineux, supra,* at 313-314; *see also, People v Allweiss, supra,* at 47.)

In a case such as the one at bar in which the defendant is charged with a litany of similarly despicable crimes, the temptation will be very great to contrive uniqueness out of what is little more than sadly common so as to permit the proof of one crime by another and thereby facilitate what may be thought a well-deserved conviction. The temptation should be resisted with the greatest care because unless the offenses are truly so unique as to make it highly probable that they

can be attributed to an identical perpetrator the prejudice to the defendant will be all but inevitable and overwhelming.

As I believe that, under the facts of this case, joinder pursuant to CPL 200.20 (2) (b) would have been legally inappropriate and that joinder, even pursuant to CPL 200.20 (2) (c) would have been subject to discretionary severance pursuant to CPL 200.20 (3); and that, even if it would have been a proper exercise of discretion to deny severance, the defendant would still have been entitled to a charge instructing the jury that each incident was to be considered separate and apart from the others *(see People v McNamee,* 71 AD2d 559, *supra; People v Harris,* 51 AD2d 937, *supra; People v Range,* 49 AD2d 832, *supra),* I respectfully dissent.

Accordingly, the judgment of the Supreme Court, New York County (Harold Rothwax, J.), rendered on August 29, 1988, after a jury trial, convicting defendant of seven counts of robbery in the first degree, two counts of rape in the first degree, two counts of sodomy in the first degree and one count of sexual abuse in the first degree, and sentencing him as a predicate violent felon to consecutive terms of imprisonment aggregating to 87½ to 175 years, should be reversed and a new trial ordered, in connection with which the defendant should be permitted to renew his motion for severance.