[845 NYS2d 331]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DWIGHT GILES, Appellant.

First Department, November 20, 2007

**APPEARANCES OF COUNSEL**

*Susanna De La Pava*, New York City, for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Frank Glaser* of counsel), for respondent.

**OPINION OF THE COURT**

Sullivan, J.

Under *People v Molineux* (168 NY 264 [1901]), the People generally may not introduce evidence that the defendant has committed an uncharged crime. Evidence of uncharged crimes attributable to the defendant is admissible, however, if relevant, to prove motive, intent, absence of mistake, identity or common plan or scheme (*id.* at 293). The list of relevant considerations warranting the admission of uncharged crimes evidence is merely illustrative, not exhaustive, and such evidence may also be used to establish an element of the crime charged (*People v Alvino*, 71 NY2d 233, 241-242 [1987]). The admission of such evidence should be followed by a jury instruction, both when the evidence is received and in the final charge, as to the limited purpose for which the evidence is being received (*see People v Williams*, 50 NY2d 996, 998 [1980]). The admission of evidence under the *Molineux* exception is subject to the further requirement that it may only be received if "its probative value for the jury outweighs the risk of undue prejudice to the defendant" (*People v Till*, 87 NY2d 835, 836 [1995]).

Evidence that someone other than defendant committed the uncharged crime, however, is not subject to the *Molineux* exclusionary rule and, if relevant, is properly admitted, inasmuch as the defendant is not prejudiced by uncharged crimes evidence that implicates another person (*see People v Delacruz*, 24 AD3d 109 [2005], *lv denied* 6 NY3d 775 [2006]). In *People v Haddock* (203 AD2d 120 [1994], *lv denied* 84 NY2d 826

[1994]), where the defendant was prosecuted for criminal possession of stolen property (a car), evidence of an uncharged knifepoint robbery during which the victim's keys were stolen was properly admitted as probative of the defendant's recent possession of the car and explanatory of why the car had not been broken into. The victim was unable to identify the defendant as the perpetrator of the robbery. The facts in that case are akin to those presented here.

On November 7, 2001, at about 1:00 A.M., two police officers, driving a marked patrol car south on Central Park West through its intersection with West 86th Street, observed defendant with an object in his hand, facing the glass doorway of 255 Central Park West, a doctor's office. As the patrol car proceeded slowly toward the office entrance, the officers observed defendant, holding a knife in his right hand at chest level, "poking" at the lock and the space between the lock and the frame of the door. The officers stopped the patrol car in front of the doorway and defendant, observing them, folded the knife and began to walk north on Central Park West. When the officers confronted him, defendant fled and, after a brief chase, was apprehended. When asked by an officer what he had been doing at the door, defendant asked, "what door?" He later said he had done "nothing" at the door.

Inspection of the door revealed fresh scratches on the door's latch area between the door and door frame. The folding knife was recovered in a search of defendant's person, as well as a Visa card bearing the name of one Ballabio, a MetroCard, an envelope containing a small amount of heroin and other items. The Visa card had been stolen from Ballabio's home during a burglary one week earlier. The MetroCard had been purchased with a MasterCard belonging to one Kaufman that had been stolen from Kaufman's home during another recent burglary, six days earlier. The trial court permitted the prosecution, over defendant's objection, to present testimony from the victims as to the underlying facts of both burglaries, which were not charged.

Evidence of the two burglaries at issue was, at the very least, relevant to show that the property defendant possessed at the time of arrest—a Visa card bearing the name of another person and a MetroCard—was stolen and that defendant knew it was stolen, an element of two of the crimes charged (knowing possession of a stolen card). As defendant possessed the two cards and both had been stolen, the jury was entitled to presume that

he knew the cards were stolen. After all, he had fled from a uniformed officer, was caught red-handed in possession of recently stolen credit cards, and when asked to explain what he had been doing at the front door of a medical office, poking at the lock with a folding knife, replied evasively. Defendant's recent, exclusive possession of the stolen cards, combined with his flight from the police and evasive statement, constituted powerful evidence of consciousness of guilt and gave rise to a strong inference that defendant knew the cards were stolen (see *People v Zorcik*, 67 NY2d 670, 671 [1986] ["Knowledge that property is stolen may be shown circumstantially, such as by evidence of recent exclusive possession, defendant's conduct or contradictory statements from which guilt may be inferred"]; see *People v Cintron*, 95 NY2d 329, 332 [2000] [inference that defendant knew property was stolen arose from his recent, exclusive possession of property and fact that he fled from apprehending officers]).

In that regard, while defendant offered to stipulate that the two cards had been stolen, he never offered to stipulate that he knew they were stolen. Since the People had to prove defendant's knowledge of the stolen character of the cards, they were not obligated to accept his rather innocuous offer (*People v Bligen*, 35 AD3d 171 [2006], *lv denied* 8 NY3d 919 [2007] [People not obligated to accept defendant's offer to stipulate to element of crime]; *People v Heine*, 238 AD2d 212 [1997], *lv denied* 90 NY2d 905 [1997]). It cannot be overstressed that the People properly rejected defendant's offer to stipulate because it did not include defendant's mens rea. Contrary to the dissent's view, the fact that the People could establish mens rea without the disputed evidence by virtue of the statutory presumption of knowledge from possession of two or more stolen credit cards (Penal Law § 165.55 [3]) is immaterial. The People could present all the admissible evidence available to them on the subject (*Alvino*, 71 NY2d at 245; *People v Marrin*, 205 NY 275, 280 [1912]). Thus, the trial court properly admitted the evidence of the two burglaries for that limited purpose.

It should be noted that the ruling was made after an in limine application where the People's offer of proof included both knowledge of the stolen character of the two cards and the mens rea with which defendant attempted the burglary of the medical office. The court ruled that the evidence was admissible, "with the proper limiting instruction," on counts three and four, each of which charged knowing possession of a stolen card. Later, the

court instructed the jury as to the evidence of the Ballabio and Kaufman burglaries on two separate occasions. After the testimony as to these crimes was elicited, the court stated:

"The defendant is not charged with either of these two burglaries and there is no evidence that he committed these burglaries. The defendant is also not charged with stealing those cards and there is no evidence that he is the person who stole them and you are not to assume that he committed either of these two burglaries and that's the instruction I am going to ask you to follow."

During the final instructions, the court further advised,

"Now, you have heard evidence in this case that a credit card belonging to . . . Ballabio and ATM card belonging to . . . Kaufman were stolen from each of their homes. The defendant is not charged with either of these two burglaries and there is no evidence that he committed them.

"The defendant is also not charged with stealing those cards. There is no evidence that he is the individual who stole them. You are not to assume that he committed either of these burglaries or that he stole either of these two cards."

Furthermore, the court refused to preclude the prosecutor from arguing that the evidence was relevant to defendant's intent to commit a crime in the medical office in connection with the attempted burglary. Consistent with its ruling in limine, the court similarly refused to charge that the jurors could not consider the two burglaries in determining whether defendant was guilty of attempting to burglarize the medical office.

The evidence of both burglaries was properly admitted. Proof connecting a defendant to the commission of an uncharged crime is admissible under *Molineux* when it is relevant to an element of a charged crime and its probative value outweighs its potential for causing unfair prejudice (*Alvino,* 71 NY2d at 242; *cf. People v Hudy,* 73 NY2d 40, 54 [1988]). Here, evidence of the theft of property is admissible, even where defendant is not charged with the theft, to prove defendant's knowledge that the cards were stolen, and thus his guilt of criminal possession of stolen property (*see People v Thompson,* 202 AD2d 337 [1994], *lv denied* 83 NY2d 915 [1994] [testimony describing uncharged gunpoint robbery during which car was stolen admissible

because it provided circumstantial evidence of defendant's knowledge that car was stolen]; *People v McCray*, 165 AD2d 765, 766 [1990] [evidence linking defendant to robbery in which credit cards were stolen, committed by unidentified person, admissible as "relevant background information which was necessary for the jury's consideration of the possession of stolen property charges"]). Thus, defendant's claim fails under traditional *Molineux* analysis.

The dissent relies on *People v Robinson* (68 NY2d 541, 544-545 [1986] ["For other crime evidence to be admissible on the issue of identity, the identity of defendant as the perpetrator of the other crime, if not conceded or previously adjudicated, must be established by clear and convincing evidence"]) for the assertion that the uncharged crime evidence should not be admissible absent "probable cause" to show that defendant committed the uncharged crimes. In so arguing, the dissent overlooks a critical distinction between the two cases. The rule announced in *Robinson* on the admissibility of uncharged crime evidence was limited to identity, for which purpose the uncharged crime evidence here, as the court clearly charged, was not received. The danger of admitting uncharged crime evidence on the issue of identity, as *Robinson* explained (at 549-550), is that on the basis of tenuous evidence connecting a defendant to the uncharged crime, a jury may convict even though not convinced of the defendant's guilt of the crime charged beyond a reasonable doubt.

Here, as noted, on more than one occasion the court instructed the jury that there was no evidence that defendant had committed either of the Ballabio or Kaufman burglaries or had stolen the cards, that he was not charged with any of those crimes, and that the jury was not to assume that he had committed them (*see People v Delacruz, supra*, 24 AD3d 109 [2005]). The jury is presumed to have followed these instructions (*see People v Davis*, 58 NY2d 1102, 1104 [1983]). In *Robinson,* in contrast, the evidence was admitted for the express purpose of establishing that the defendant had committed the uncharged crime.

Defendant argues that the court's limiting instruction as to the uncharged crimes evidence was "inadequate and confusing," while the dissent, partially agreeing, asserts that the court failed to instruct the jury that, contrary to the People's argument in summation, the stolen cards evidence could not be considered as evidence of the crime defendant intended to commit in attempting to burglarize the medical office. The argu-

ment that the charge was inadequate and confusing is not preserved because defendant never specified the charge he now asserts was necessary. While defendant did request a charge, that charge was plainly unacceptable (*see People v Thomas*, 51 NY2d 466, 474 [1980] [claim that court failed to deliver instruction not preserved where, rather than requesting it, defendant requested different instructions to which he was not entitled]). In any event, there is no merit to either defendant's claims or the dissent's position.

The charge defendant requested would have limited the jurors to considering the uncharged burglaries only for the purpose of determining whether the Visa card and MetroCard were stolen, a limitation grossly unfair to the People. The evidence, which was uncontested, was also relevant to defendant's knowledge that the cards were stolen, an element of two of the charged crimes, as well as his intent to commit a crime, i.e., larceny, in the medical office. While defendant, a drug user whose supply had dwindled significantly, had no legitimate reason to be at the door of the office in the dead of night, poking at the lock with a knife, and his intent to steal drugs or other property from the medical office was thus inferable, his efforts had not advanced to a point that his intent to enter the premises to steal was so clear as to render additional proof irrelevant. Thus, his possession of stolen property under circumstances indicating his knowledge that the property was stolen was highly relevant to an element of the crimes charged, i.e., his intent to steal once he gained entry to the medical office. Defendant's requested charge would unjustifiably have ruled out consideration of this highly relevant evidence, and the court properly rejected it.

Apparently unwilling, for some unfathomable reason, to deliver an instruction that would have provided guidance to the jury, consistent with its ruling on the in limine application as to the appropriate consideration that should have been given to the uncharged crimes evidence, the court gave a charge, both on the day that Ballabio and the Kaufmans testified and in its final charge, which, while unfair to the People, fully protected defendant's right to a fair trial. As noted, the court repeatedly instructed the jury that (1) defendant was not charged with either of the burglaries or related credit card and MetroCard thefts, (2) there was no evidence that defendant had committed those crimes, and (3) it was not to assume that defendant had done so.

Such a charge, of course, ignored the substantial body of evidence that defendant knew the credit card and MetroCard were

stolen, which, as noted, was relevant to one of the elements of two of the counts and, in turn, as to whether defendant harbored a larcenous intent as he attempted to break into the medical office on the night in question. There was, of course, his flight, as noted, from the uniformed officers and his evasive "what door?" response when asked what he was doing at the entrance to the medical office.

The most convincing evidence of defendant's knowledge was the similar circumstances of the Visa card's theft and defendant's acquisition of the MetroCard. In each of the burglaries, a person other than defendant—as the court's charge stated— stole a credit card, and shortly thereafter, one of them was used to purchase a $63 MetroCard. A MasterCard taken in the Kaufman burglary was used to purchase the MetroCard found on defendant at the time of his arrest. The Visa card stolen in the Ballabio burglary was, as noted, also found on defendant. Thus, there were essentially two ways in which defendant theoretically could have acquired the Visa card and MetroCard in question: he could have obtained them from the burglar or a fence, or—as defense counsel argued in summation—he could have found them, not knowing they were stolen.

If defendant bought the cards from a burglar or fence, then he had to know they were stolen. Furthermore, as Ballabio's name was embossed on the Visa card, defendant also knew that when he bought the card the seller had, at the very least, wrongfully withheld it from its owner. Thus, defendant knew that the card was stolen property when he acquired it (*see* Penal Law § 155.05 [1]).

That the Ballabio and Kaufman credit cards had been stolen in similar burglaries made it virtually inconceivable that defendant could have obtained Ballabio's Visa card from one person and the MetroCard that had been purchased with the Kaufman MasterCard from an unrelated person. The close relationship between the Visa card and the MetroCard reasonably compelled the conclusion that defendant had acquired the two cards in the same transaction and thus knew that the MetroCard, like the credit card, was stolen.

Therefore, the relationship between the two cards defeated defendant's argument that he could have innocently found them, believing they had been lost. Even under defendant's version, however, if he had innocently found the Visa card, he knew it belonged to Ballabio. Yet, there is nothing to show that he made any effort to return the card, as an innocent person would

do. Instead, defendant kept the card on his person where, one week after the burglaries, it was recovered with a MetroCard which, amazingly, was purchased with a MasterCard taken in a burglary similar to the one in which the Visa card was stolen. Since this was a coincidence too unlikely to be accepted by the average juror, the defense argument was properly rejected. Moreover, it should be noted that the Kaufman burglary, which yielded the MasterCard used to purchase the MetroCard, took place in a building in the West 90's on Manhattan's Upper West Side, while the Ballabio burglary, during which the Visa card was taken, took place in a building located in the East 70's on Manhattan's Upper East Side. That the two cards, traceable to burglaries on opposite sides of Manhattan, could have been innocently found, together, asks too much of the ordinary juror to accept.

Thus, as the record shows, the evidence of the Ballabio and Kaufman burglaries was highly relevant to prove that the Visa card was stolen and the MetroCard was purchased by the use of a stolen MasterCard, and that defendant possessed the cards with the requisite mens rea; this evidence was properly admitted under the strictures of *Molineux*. Moreover, since the court repeatedly instructed the jury that defendant did not commit the burglaries, the admission of the evidence was not even subject to the *Molineux* rule (*see Delacruz*, 24 AD3d at 110). In either event, defendant's rights were fully protected by the court's charge.

The dissent complains that the People, by their repeated refrain that "a matching pattern of stolen credit cards and stolen MetroCards" existed, used the Ballabio and Kaufman evidence to suggest that defendant was, in fact, involved in the commission of the uncharged burglaries. The dissent also cites the prosecutor's comment that it was "more than coincidence . . . that the stolen [cards] are both fruits of residential burglaries, low-rise buildings, a single day apart, in Manhattan." While defendant objected generally to the remarks, he never argued that they implied he had a propensity to commit burglaries. Thus, this claim is unpreserved. In any event, on the merits, the dissent, like defendant, takes the comment completely out of context. The remarks were part of a larger argument that the two burglaries demonstrated the fallacy of defendant's summation argument that he could have "scavenged" the stolen cards without knowing they had been stolen and that it was a mere "coincidence" that he had been carrying both cards when ar-

rested. In context, the prosecutor's remarks constituted a proper response to defendant's summation and did not convey the suggestion of propensity.

The dissent also complains that the prosecution was permitted to introduce evidence as to the details of the uncharged burglaries, while defendant, echoing the same complaints, cites testimony about the fear each victim experienced as a result of the perpetrator's illegal entry into his or her home, undoubtedly referring to Ballabio's testimony that he was afraid to enter his apartment after the burglary and the Kaufmans' testimony that Mr. Kaufman checked on the couple's baby when his wife alerted him that there was an intruder in the apartment. Unfortunately for defendant, he never objected to such testimony and never argued that the victims were injecting fear into the record. Therefore, any such claim in unpreserved on review as a matter of law (see CPL 470.05 [2]).

In any event, there is no merit to the claim. Ballabio merely testified, without objection, that after returning to his apartment after dinner to find that it had been burglarized, he did not want to enter "for fear that somebody might still be in the bedroom or the bathroom or inside a closet so I went back outside and I called up 911." He did not comment on his fear other than to give an account of his actions. Even if the jurors empathized with Ballabio, defendant would not have been prejudiced because Ballabio did not identify defendant as the burglar and the court repeatedly instructed the jury that there was no evidence that defendant was the burglar. Significantly, it was defendant's counsel who elicited the testimony in question on cross-examination. Given the circumstances, the complaint rings hollow.

Nor did the Kaufmans' testimony "alarm the jury at the prospect of an imperiled infant," as defendant argues. Mr. Kaufman testified, without objection, that he "went across the hall to make sure the baby was okay," and his wife merely stated, also without objection, that her husband "went to be with the child." Thus, the references to the infant were bland and brief and merely recounted, matter-of-factly, what Mr. Kaufman did when his wife awakened him to tell him that she saw a man with a flashlight looking around in the kitchen. The Kaufmans did not identify defendant as the burglar, and the court's repeated instructions eliminated him as the perpetrator. On this record, there was no prejudice to defendant from the references to Mr. Kaufman's check of the infant's room.

Finally, while defendant objected to the admission of evidence of the two uncharged burglaries, he raised no specific objection to the matters complained of by the dissent, i.e., the mode of the burglar's entry, the manner of entry and what was taken. Thus, these complaints are unpreserved. In any event, the latter subject was, of course, admissible under *Molineux* and represented the point behind the court's pretrial ruling.

Thus, the testimony as to the Kaufman and Ballabio burglaries, consistent with the court's pretrial ruling, was properly received on the issue of defendant's knowing possession of the stolen cards and his intent in attempting to burglarize the medical office. Defendant's current claims as to the excessiveness of the proof allowed and the prejudice it caused are unpreserved and without merit.

We have examined defendant's other contentions and find them to be without merit.

Accordingly, the judgment of Supreme Court, New York County (Charles H. Solomon, J.), rendered March 24, 2003, convicting defendant, after a jury trial, of attempted burglary in the second and third degrees, two counts of criminal possession of stolen property in the fourth degree, and possession of burglar's tools, and sentencing him as a persistent felony offender to an aggregate term of 20 years to life, should be affirmed.

KAVANAGH, J. (dissenting). Even though defendant has never been arrested or charged with these two burglaries, the majority takes the position that details as to how each was committed are somehow relevant to prove defendant's state of mind at the time of his arrest. If defendant did not commit these crimes, or perhaps more appropriately, if it cannot be proven that he was the perpetrator, it is incomprehensible that the specific details of how either of these burglaries were committed could, in any way, be relevant in determining whether defendant, when arrested, knew he was carrying stolen property or was intent on committing a burglary. Because there can be no denying the prejudicial impact of the admission of this evidence on defendant's right to a fair trial, I believe his conviction should be reversed and a new trial ordered.

At the outset, it must be noted that there were but two issues raised during the trial that were the subject of meaningful dispute. One was whether defendant knew the property in his

possession was stolen, and the other was whether he was, at the time of his arrest, in the process of committing a burglary. That defendant possessed stolen property was never seriously disputed, as evidenced by defendant's offer to stipulate to that fact at trial.

Without a doubt, the fact that defendant was in possession of stolen property was an element of one of the crimes for which the defendant was on trial, and the prosecution had not only the right, albeit the obligation, to prove it. However, to meet that burden, it was not necessary to present detailed accounts from three victims of two separate burglaries as to *how* that property was actually stolen. It is true that the prosecution was under no obligation to enter into a stipulation that the property was stolen as proposed by defendant. However, its refusal to enter into such a stipulation did not relieve the trial court from its ongoing responsibility to insure that evidence introduced at trial, whatever the theory, was relevant and not impermissibly prejudicial (*see People v Gautier,* 148 AD2d 280, 285 [1989]). With that in mind, the trial court, in the sound exercise of its discretion, could have allowed the prosecution to call its witnesses—although it never explained the need to call all three— but limit their testimony to an identification of their property found on defendant's person, when it was stolen, and that they had not given defendant permission or authority to possess it (*see People v Hendricks,* 205 AD2d 333 [1994], *lv denied* 84 NY2d 826 [1994]).

Instead, the court allowed elaborate descriptions from the victims as to how the burglaries occurred, and then followed with the following instruction:

> "The defendant is not charged with either of these two burglaries and there is no evidence that he committed these burglaries. The defendant is also not charged with stealing those cards and there is no evidence that he is the person who stole them and you are not to assume that he committed either of these two burglaries."

The court refused to charge, consistent with its evidentiary ruling, that this evidence could only be considered in determining whether defendant was in possession of the stolen property and that it could not be considered in determining whether defen-

dant when arrested was in the process of committing a burglary.*

Specifically, the three victims described how they learned their apartments had been illegally entered, and listed all the property, in addition to that recovered from defendant, that had been stolen. One victim recounted how she awoke at 4:00 A.M. to find a man dressed in black going through her apartment with a flashlight. She woke her husband, who then went to be with their child while she called the police. The husband testified to going to the child's room to make sure "the baby was okay." He also testified that in addition to a credit card, he lost his watch in the burglary and later determined that the burglar had gained entry to their apartment through a door leading from the building's roof. Another victim testified that upon returning to his apartment late at night, he found all the doors open, and the "accordion gates on my bedroom had been—looked like they were kicked in and the window in my living room had been pulled open." He testified that many of his belongings in the apartment had been moved, and that in addition to his credit card, a computer and a palm pilot were taken in the burglary. None of the three victims was able to identify the perpetrator or in any way implicate defendant in the commission of these crimes.

Uncharged crimes may be proved against a defendant if it is determined that they are relevant to prove a defendant's intent, motive, knowledge, common scheme or plan, or identity for the crime for which he is on trial (*People v Molineux*, 168 NY 264 [1901]). It may also be used to establish an element of the crime charged, or complete the narrative, or if the circumstances surrounding the commission of the uncharged crime are "inextricably interwoven" with the crime charged (*People v Samlal*, 292 AD2d 400 [2002], *lv denied* 98 NY2d 680 [2002]; *see People v Alvino*, 71 NY2d 233 [1987]). However, even if a proper basis exists for its admission, such evidence may only be received if "its probative value for the jury outweighs the risk of undue prejudice to the defendant" (*People v Till*, 87 NY2d 835, 836 [1995]).

In my view, this testimony given by these three victims and the specific detail each provided in recounting how their property was stolen can only be relevant to the defendant's state of

---

* The prosecution argued that defendant's possession of the stolen property was relevant to establish the crime he intended to commit if he gained entry into the building that housed the medical office.

mind if in fact it can be established that he was the perpetrator. At the risk of being redundant, there is not only insufficient evidence to prove defendant committed either of these burglaries, but he was never even arrested or charged with being the perpetrator.

The majority's position is based in part on the novel proposition that evidence of an uncharged crime can be used against a defendant to prove his intent or state of mind even though only a minimal amount of evidence exists that he in fact committed it. In my opinion, basic fundamentals of due process require that before a jury is presented with such evidence, there must be, at the very least, *probable cause* to show that in fact that defendant committed the uncharged crime (*compare People v Robinson*, 68 NY2d 541, 544-545 [1986] ["For other crime evidence to be admissible on the issue of identity, the identity of defendant as the perpetrator of the other crime, if not conceded or previously adjudicated, must be established by *clear and convincing evidence*" (emphasis added)], *and People v Bynum*, 275 AD2d 251 [2000], *lv denied* 95 NY2d 961 [2000]). Here, what evidence that did exist connecting defendant to either of these burglaries was not sufficient to support a decision to arrest and charge him with their commission. Simply because he possessed some of the property taken in these burglaries did not necessarily mean he stole them, and that fact, coupled with the five-to-six-day interval between the commission of these burglaries and his arrest, is presumably why he was never charged with their commission. For that reason, this evidence should never have been admitted at trial.

Given the limited relevance that the evidence regarding the uncharged burglaries had to the issues at trial, there can be little doubt that its prejudicial impact far outweighed any probative value it might otherwise have had. The testimony given by the victims detailing the specifics of these illegal entries added little to the one issue upon which this evidence was relevant and had some probative value, namely that the cards found in defendant's possession were in fact stolen. The belated attempt by the trial court to minimize the prejudicial impact this evidence might have had on the jury, simply stated, did not go far enough. It should have included, at the very least, an admonition that this evidence was of limited value and could only be considered by the jury on the issue of whether the property found in defendant's possession was stolen.

The problems presented by the introduction of this evidence were aggravated by the veiled insinuation made by the prosecu-

tion throughout the trial that "a matching pattern of stolen credit cards and stolen MetroCards" existed suggesting that defendant was in fact involved in the commission of the uncharged burglaries. In that vein, the prosecutor argued in her summation that "these two items of stolen property are connected to each other" and that it "is more than coincidence . . . that the stolen MetroCard and the stolen credit card are both fruits of residential burglaries, low-rise buildings, a single day apart, in Manhattan."

Finally, none of this was really necessary. Defendant's actions at the time of his arrest left little doubt as to his intentions when seen by the police "poking" at the medical office door. His flight from the scene, his responses to the police when asked to account for his actions, the fact that heroin and a credit card in another person's name were found on his person, his possession of a knife and the fresh scratch marks found on the building door all make plain that his intent was to commit a burglary. There simply was no need to present evidence of criminal activity for which the defendant was never charged to establish what was on his mind when seen by the police at the entrance to the medical office. This same analysis applies with equal force to the charge that defendant knew the property in his possession was stolen; the attendant circumstances of his arrest, coupled with the statutory presumption contained in the Penal Law, provide an ample basis upon which to conclude that defendant knew each of the cards in his possession was either stolen or causally connected to stolen property (Penal Law § 165.55 [3]). As such, the evidence of the prior burglaries added little to what was already before the jury and "therefore should be precluded even though marginally relevant, where intent may be easily inferred from the commission of the act itself" (*People v Alvino*, 71 NY2d 233, 242 [1987]). Yet, the highly prejudicial nature of such evidence, in my view, compels the conclusion that its admission was not harmless error.

GONZALEZ and CATTERSON, JJ., concur with SULLIVAN, J.; SAXE, J.P., and KAVANAGH, J., dissent in a separate opinion by KAVANAGH, J.

Judgment, Supreme Court, New York County, rendered March 24, 2003, affirmed.